UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISSAM HAMID ALI BIN ALI AL JAYFI,<br>    Detainee,<br>    Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba,<br><br>HAMID ALI AL JAYFI,<br>As Next Friend of ISSAM HAMID ALI BIN ALI AL<br>JAYFI,<br><br>OTHMAN ALI MOHAMMED AL SHAMRANY,<br>    Detainee,<br>    Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba<br><br>ALI MOHAMED OMAR AL SHOMRANY,<br>As Next Friend of OTHMAN ALI MOHAMMED AL<br>SHAMRANY,<br><br>KHALID MOHAMMED AL THABBI,<br>    Detainee,<br>    Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba,<br><br>MUHAMMED AHMED MUHAMMED AL<br>GHURBANY, As Next Friend of KHALID<br>MOHAMMED AL THABBI,<br><br>ALI HAMZA AHMED SULIMAN BAHLOOL,<br>    Detainee,<br>    Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba,<br><br>ABDOUL MOHAMMED AHMED BAHLOOL,<br>As Next Friend of ALI HAMZA AHMED SULIMAN<br>BAHLOOL<br><br>SALEH MOHAMMED SELEH AL THABBII, a/k/a<br>SALEH MOHAMMED AL DHABI,<br>    Detainee,<br>    Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   PETITION FOR WRITS OF<br>HABEAS CORPUS |

FATMAH QHASIM AL AHMADI                    )
As Next Friend of SALEH MOHAMMED SELEH    )
AL THABBII                                )
                                          )
ABDUL AL QADER AHMED HUSSAIN,             )
        Detainee,                         )
        Guantánamo Bay Naval Station      )
        Guantánamo Bay, Cuba,             )
                                          )
ABDULGADER AHMED HASIN ABOBAKER           )
As Next Friend of ABDUL AL QADER AHMED    )
HUSSAIN                                   )
                                          )
                Petitioners/Plaintiffs,   )
                                          )
v.                                        )
                                          )
GEORGE W. BUSH,                           )
        President of the United States    )
        The White House                   )
        1600 Pennsylvania Ave., N.W.      )
        Washington, D.C. 20500            )
                                          )
DONALD RUMSFELD,                          )
        Secretary, United States         )
        Department of Defense             )
        1000 Defense Pentagon             )
        Washington, D.C. 20301-1000       )
                                          )
ARMY BRIG. GEN. JAY HOOD,                 )
        Commander, Joint Task Force - GTMO )
        JTF-GTMO                          )
        APO AE 09360; and                 )
                                          )
ARMY COL. MIKE BUMGARNER,                 )
        Commander, Joint Detention        )
            Operations Group – JTF-GTMO   )
        JTF-GTMO                          )
        APO AE 09360,                     )
                                          )
                Respondents/Defendants.   )
                                          )
                                          )
                                          )

## PETITION FOR WRITS OF HABEAS CORPUS

1.    Petitioners Issam Hamid Ali Bin Ali Al Jayfi, Othman Ali Mohammed Al Shamrany, Khalid Mohammed Al Thabbi, Ali Hamza Ahmed Suliman Bahlool, Saleh Mohammed Seleh Al Thabbii and Abdu Al Qader Ahmed Hussain (collectively the "Detained Petitioners") seek Writs of Habeas Corpus and the injunctive and declaratory relief described below.

2.    Detained Petitioners act on their own behalf and through their Next Friends: Hamid Ali Al Jayfi, the father of Issam Hamid Ali Bin Ali Al Jayfi; Ali Mohammed Omar Al Shomrany, the father of Othman Ali Mohammed Al Shamrany; Muhammed Ahmed Muhammed Al Ghurbany, the brother of Khalid Mohammed Al Thabbi; Abdoul Mohammed Ahmed Bahlool, the cousin of Ali Hamza Ahmed Suliman Bahlool; Fatmah Qhasim Al Ahmed, the wife of Saleh Mohammed Seleh Al Thabbii;[1] Abdulgader Ahmed Hasin Abobaker, the father of Abdul Al Qader Ahmed Hussain (collectively the "Next Friends").[2]   All of the Detained Petitioners and all of the Next Friends are citizens of Yemen.

3.    Detained Petitioners are civilians wrongly classified as "enemy combatants" by the President of the United States and are being held virtually *incommunicado* in military custody at the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel, and without being afforded any fair process by which they might challenge their detention. Detained Petitioners are being held by color and authority of the Executive, and in violation of the U.S. Constitution, laws and treaties of the United States

---

[1] We understand this Detained Petitioner has at times been referenced as Saleh Mohammed Al Dhabi.

[2] *See* Ex. A (Authorization of Hamid Ali Al Jayfi); Ex. B (Authorization of Ali Mohammed Omar Al Shomrany); Ex. C (Authorization of Muhammed Ahmed Muhammed Al Ghurbany); Ex. D (Authorization of Abdoul Mohammed Ahmed Bahlool); Ex. E (Authorization of Fatmah Qhasim Al Ahmed); Ex. F (Authorization of Abdulgader Ahmed Hasin Abobaker).

and customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release the Detained Petitioners or to establish in this Court a lawful basis for the Detained Petitioners' detention. This Court should also order the injunctive and declaratory relief described below.

4.    Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13, 2001 Military Order, *see* ¶¶ 22-24 *infra*, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the Detained Petitioners at Guantánamo Bay.

## JURISDICTION

5.    Petitioners bring this action under 28 U.S.C. §§ 2241(a), 2241(c)(1) and (c)(3), and 2242. Detained Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; and Articles I and II of and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

6.    This Court is empowered under 28 U.S.C. § 2241 to grant the Writ of Habeas Corpus and to entertain the Petition filed on behalf of the Detained Petitioners by the Next Friends under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201 and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual

controversy within the Court's jurisdiction. Finally, this Court is authorized to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## PARTIES

7.      Detained Petitioners are citizens of Yemen who are presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Because the Detained Petitioners have been denied access to legal counsel and to the courts of the United States, family members act as Next Friends for them in this proceeding. All of the Next Friends are citizens of Yemen.

8.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the U.S. military. Detained Petitioners are being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or, alternatively, pursuant to the Military Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Executive Order"). President Bush is responsible for the Detained Petitioners' unlawful detention and is sued in his official capacity.

9.      Respondent Rumsfeld is the Secretary of the U.S. Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war, or, alternatively, pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of the Detained Petitioners. He is sued in his official capacity.

10.      Respondent Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo. He has supervisory responsibility for the Detained Petitioners and is sued in his official capacity.

11.     Respondent Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where the Detained Petitioners are presently held.  He is the immediate custodian responsible for the Detained Petitioners' detention and is sued in his official capacity.

12.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees, or contractor employees.

## STATEMENT OF FACTS

13.     Upon information and belief, Detained Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the U.S. Government in any civil or military proceeding.

14.     Upon information and belief, Detained Petitioners are not, nor have they ever been, "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

15.     Detained Petitioners seek to enforce their right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that each of the Detained Petitioners is either an "enemy combatant" as defined by the U.S. Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by

4

the Executive in the Combatant Status Review Tribunals process begun by the Department of Defense in 2004.

16.     Upon information and belief, at the time of their seizure and detention, Detained Petitioners were not members of the Taliban Government's armed forces, Al Qaeda or any other organization or force hostile to the United States.  Upon information and belief, they did not cause or attempt to cause any harm to American personnel or property prior to their detention, and they had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda.  They remain incarcerated at the U.S. Naval base at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control.

17.     Detained Petitioners have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

18.     Upon information and belief, Detained Petitioners desire to pursue in the courts of the United States every available legal challenge to the lawfulness of their detention.

### The Joint Resolution

19.     In the wake of the September 11, 2001 attacks on the United States and at the direction of Respondent Bush, the United States began a massive military campaign against the Taliban Government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized the President to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or

[that] harbored such organizations or person." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

20.    Upon information and belief, Detained Petitioners did not participate in the armed conflict at any point in time; therefore, they are not properly detained pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

21.    Upon information and belief, Detained Petitioners are not, and have never been, members of Al Qaeda or any other terrorist group and have not committed or espoused any violent act against any American person or property.  They had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. They are not properly subject to the detention order issued by President Bush.  Because they did not participate in the armed conflict at any point in time, they are not properly subject to the President's authority as Commander-in-Chief or under the laws and usages of war.

### The Executive Order

22.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone President Bush has "reason to believe":

    i.    is or was a member of the organization known as al [Qaeda];

    ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the Untied States, its citizens, national security, foreign policy, or economy; or

    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) or (ii) . . . .

*See* Military Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833, § 2(a)(1) (Nov. 13, 2001). Respondent Bush must make this determination in writing. The Executive Order was neither authorized nor directed by Congress and is beyond the scope of the Joint Resolution of September 18, 2001.

23.    The Executive Order purports to vest Respondent Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for the person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law and provides neither the right to counsel nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

24.    The Executive Order was promulgated in the United States and in this judicial district; the decision to incarcerate the Detained Petitioners was made by Respondents in the United States and in this judicial district; the decision to detain the Detained Petitioners at Guantánamo was made in the United States and in this judicial district; and the decision to continue detaining the Detained Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

25.     Upon information and belief, Respondent Bush has never certified or determined in any manner, in writing or otherwise, that the Detained Petitioners are subject to the Executive Order.

26.     Detained Petitioners are not properly subject to the Executive Order.

27.     Detained Petitioners have not been, and are not being, detained lawfully either pursuant to the Executive Order, the President's authority as Commander-in-Chief, or under the laws and usages of war.  Detained Petitioners were not arrested or detained by the United States in the course of an armed conflict and, therefore, are not properly detained under the President's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

28.     On our about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the U.S. Naval Base at Guantánamo.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

29.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

30.     Upon information and belief, by early 2002, the precise date being unknown to counsel, but known to Respondents, the U.S. military transferred the Detained Petitioners to Guantánamo, where they have been held ever since in the custody and control of Respondents.

### The Conditions of Detention at Guantánamo

31.     Since gaining control of the Detained Petitioners, the U.S. military has held them virtually *incommunicado.*

32.    Upon information and belief, the Detained Petitioners have been or will be interrogated repeatedly by agents of the U.S. Departments of Defense and Justice and the Central Intelligence Agency, although they have not been charged with an offense and have not been notified of any pending or contemplated charges.  They have not appeared before a lawful military or civilian tribunal and have not been provided access to counsel or the means to contact and secure counsel.  They have not been adequately informed of their rights under the U.S. Constitution, U.S. Military regulations, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees, or customary international law.  Indeed, Respondents have taken the position that the Detained Petitioners should not be informed of these rights.  As a result, the Detained Petitioners lack any ability to protect or to vindicate their rights under domestic and international law.

33.    Upon information and belief, the Detained Petitioners have been forced to provide involuntary statements to Respondents' agents at Guantánamo.

34.    Upon information and belief, the Detained Petitioners have been and will continue to be held under conditions that violate their constitutional, treaty, and international rights to dignity and freedom from torture and from cruel, inhuman, and degrading treatment or punishment.[3]

---

[3] *See, e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3 (2005); United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C.
(continued...)

9

35.     Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer.[4]

36.     In a confidential report to the U.S. Government, the International Committee of the Red Cross ("ICRC") charged the U.S. military with intentional use of psychological and physical coercion on prisoners at Guantánamo during interrogations that is "tantamount to torture."[5]  The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations.[6]

37.     Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including Federal Bureau of Investigation memos detailing torture and "highly aggressive interrogation techniques," including twenty-four (or more) hour

---

Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

[4] *See, e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003). Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

[5] *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1.

[6] *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music.[7]

38.    In addition, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees.[8]

39.    In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture incidents – such as aggressive use of dogs, sexual humiliation, stress positions and sense deprivation – were pioneered at Guantánamo.[9]

40.    The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the U.S. Government present themselves as lawyers for the detainees during meetings with the detainees for the purpose of extracting information from the detainees.[10]   Moreover,

---

[7] See, e.g., Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," Wash. Post, Aug. 13, 2005, at A18; Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Guantánamo: An Icon of Lawlessness, Amnesty International, Jan. 6, 2005, at 3-5; see also Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," New York Times, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," Washington Post, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," New York Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," Washington Post, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," New York Times, Dec. 7, 2004, at A19.

[8] Associated Press, Gitmo Soldier Details Sexual Tactics, Jan. 27, 2005; and see Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 89-90, Ch. 12, AMR 51/063/2005 (13 May 2005).

[9] See Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," Wash. Post, July 27, 2005, at A14; and Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," Wash. Post, July 14, 2005 at A1.

[10] See Sam Hannel, "Lawyers Describe Guantánamo Detainees," Seattle Post-Intelligencer, Jan. 19, 2005.

military defense lawyers have been instructed to materially limit their representation disfavorably to their detainee clients in violation of due process.[11]

41.   Respondents, acting individually or through their agents, have stated that limitations normally applicable to coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense, *do not apply* to interrogations conducted by agents of the Central Intelligence Agency or other entities under President Bush.[12]

42.   In published statements, Respondents Bush and Rumsfeld, and predecessors of Respondents Hood and Bumgarner, respectively, Lenhert and Carrico, have proclaimed that the United States may hold detainees at Guantánamo under their current conditions indefinitely.[13] According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely.[14] Counsel for Respondents have also consistently maintained that the United States may hold the

---

[11] *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005 at A25 (Late Ed.).

[12] *See e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times,* Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post,* Jan. 18, 2005, at A4.

[13] *See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held [...] 'We have to look at Camp X-ray as a work in progress [...]' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post,* February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

[14]   *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August 24, 2005).

detained Petitioners under their current conditions indefinitely.[15]    In fact, Respondents have failed to release detainees even after they have been found to be non-enemy combatants by the Combatant Status Review Tribunals.[16]    The U.S. Government has also recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo.[17]

### Rendition

43.    During interrogations, detainees also have been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture.    Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture.[18]

44.    The U.S. Government's practice of extraordinary rendition has been well documented by American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken

---

[15] *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

[16] *See* Robin Wright, "Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); *and* Ben Fox, "U.S. to Ease Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005 at C4.

[17] Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

[18] *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.[19]

45.     In fact, the U.S. Government has recently announced its intention to render many Guantánamo detainees to countries which have a poor record of respecting human rights and which engage in torture.[20]     Moreover, upon belief and information, the Government is conditioning such rendering of detainees to their home countries on the requirement that the home country imprison the detainee, without regard to the detainee's individual factual or legal situation.[21]     Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY)

---

[19] Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . ., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

[20] *See e.g.,* Matthew Waxman, "Beyond Guantanamo," *Wash. Times*, Aug. 20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Times*, August 9, 2005, at A13; Neil Lewis, "Guantanamo Detention Site Is Being Transformed, U.S. Says," *NY Times*, August 6, 2005, at A8 (Late Ed.); Paul Richter, "U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay," *LA Times*, Aug. 5, 2005 at A18.

[21] *See* Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Post*, August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemenis from Guantanamo Bay," August 10, 2005 (available from LEXIS, MWP90 file) ("The US authorities declared few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.").

46.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

47.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny the Detained Petitioners the process accorded to persons seized and detained by the U.S. military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

48.    To the extent that the Detained Petitioners' detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to the Detained Petitioners and, therefore, also violates 28 U.S.C. § 2241(c)(3).

49.    To the extent that the Detained Petitioners' detention is under or by color of the authority of the United States it is without basis in law, and violates the common law principles of due process embodied in 28 U.S.C. § 2241(c)(1), the Detained Petitioners' detention is unlawful.

50.    Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF
THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

51.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

52.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of the Detained Petitioners to be free from unlawful conditions of confinement in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

53.    Accordingly, Detained Petitioners are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

54.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

55.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny the Detained Petitioners the process accorded to persons seized and detained by the U.S. military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

56.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241(c)(3).

57.    Respondents are liable for this conduct described above insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

58.     Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

59.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

60.     By the actions described above, Respondents have denied and continue to deny the Detained Petitioners the due process accorded to persons seized and detained by the U.S. military in times of armed conflict as established by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments, domestic judicial decisions, and other authorities.

61.     Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

62.     Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

63.     By the actions described above, Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon the Detained Petitioners in order to obtain coerced information or confessions from them, punish or intimidate them, or for other purposes. Among other abuses, upon information and belief, the Detained Petitioners have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary

17

confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

64.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

65.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Detained Petitioners.

66.    Detained Petitioners were forced to suffer severe physical and psychological abuse and agony and are entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

67.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

68.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of the Detained Petitioners constitutes war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions,

and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decisions, and other authorities.

69.    As a result of Respondents' unlawful conduct, the Detained Petitioners have been and are forced to suffer severe physical and psychological abuse and agony and are, therefore, entitled to habeas, declaratory, and injunctive relief as well as other relief that the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

70.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.    The acts described herein had the intent and the effect of grossly humiliating and debasing Detained Petitioners, forcing them to act against their will and conscience, inciting fear and anguish, and breaking their physical or moral resistance.

72.    The acts described herein constitute cruel, inhuman, or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman, or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman, or degrading treatment of Detained Petitioners.

74.    Detained Petitioners were forced to suffer severe physical and psychological abuse and agony and are entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

75.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.    The acts described herein constitute arbitrary arrest and detention of the Detained Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

77.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of the Detained Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

78.    As a result of Respondents' unlawful conduct, the Detained Petitioners have been and are deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse and are, therefore, entitled to habeas, declaratory, and injunctive relief as well as other relief that the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

79.     Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

80.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of the Detained Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

81.     As a result of Respondents' unlawful conduct, the Detained Petitioners have been, and continue to be, deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse and are, therefore, entitled to declaratory and injunctive relief as well as other relief that the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

82.     Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.     Detained Petitioners are not, nor has they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2642 n.1 (2004).

84.    By the actions described above, Respondent Bush has exceeded and continues to exceed the Executive's authority under Article II of the U.S. Constitution by authorizing, ordering, and directing that military officials seize the Detained Petitioners and transfer them to military detention and by authorizing and ordering their continued military detention at Guantánamo.   All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of the Detained Petitioners.

85.    The military seizure and detention of the Detained Petitioners by the Respondents is *ultra vires* and illegal because it violates Article II of the U.S. Constitution.   To the extent that the Executive asserts that the Detained Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to the Detained Petitioners.

86.    To the extent that Respondents assert that their authority to detain the Detained Petitioners derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

87.    Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

88.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See*, *e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

90.    By arbitrarily and capriciously detaining the Detained Petitioners in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.    Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS
DENIAL OF DUE PROCESS)

92.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

93.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny the Detained Petitioners the process accorded to persons seized and detained by the U.S. military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

94.    Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF

(VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING
TREATMENT)

95.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Detained Petitioners to torture and/or cruel, inhuman, or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

97.    Accordingly, the Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

98.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.    Respondents consistently have contrived to intrude upon the Detained Petitioners' right to consult with counsel by conditioning counsel's access to the Detained Petitioners on unreasonable terms, including classification/declassification procedures, all in violation of the Detained Petitioners' attorney-client privilege, their work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

100.    Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

24

101.  Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.  Upon information and belief, Detained Petitioners are at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture.  The transfer of the Detained Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of the Detained Petitioners' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

103.  Accordingly, Detained Petitioners are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

104.  Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

105.  Upon information and belief, Detained Petitioners are at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture.  The transfer of the Detained Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a direct violation of Detained Petitioners' rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of  Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

106.  Accordingly, the Detained Petitioners are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

107.    Detained Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

108.    Upon information and belief, Detained Petitioners are at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture. The transfer of the Detained Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of the Detained Petitioners' rights under customary international law, which may be vindicated under the Alien Tort Statute.

109.    Accordingly, the Detained Petitioners are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### PRAYER FOR RELIEF

**WHEREFORE**, Detained Petitioners pray for relief as follows:

1.    Grant Petitioner Hamid Ali Al Jayfi status as Next Friend of Issam Hamid Ali Bin Ali Al Jayfi;

2.    Grant Petitioner Ali Mohammed Omar Al Shomrany status as Next Friend of Othman Ali Mohammed Al Shamrany;

3.    Grand Petitioner Muhammed Ahmed Muhammed Al Ghurbany status as Next Friend of Khalid Mohammed Al Thabbi;

4.    Grant Petitioner Abdoul Mohammed Ahmed Bahlool status as Next Friend of Ali Hamza Ahmed Suliman Bahlool;

5.    Grant Petitioner Fatmah Qhasim Al Ahmadi status as Next Friend of Saleh Mohammed Seleh Al Thabbii;

6.    Grant Petitioner Abdulgader Ahmed Hasin Abobaker status as Next Friend of Abdul Al Qader Ahmed Hussain;

26

7.     Grant a Writ of Habeas Corpus with respect to each of the Detained Petitioners and order Respondents to release each from his current unlawful detention;

8.     Order that each of the Detained Petitioners be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

9.     Order that each of the Detained Petitioners must not be transferred to any other country without the specific written agreement of the Detained Petitioner and/or his counsel while this action is pending;

10.     Order that each of the Detained Petitioners must not be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subjected to torture;

11.     Order Respondents to allow counsel to meet and confer with each of the Detained Petitioners in private and unmonitored attorney-client conversations;

12.     Order Respondents to cease all direct or indirect interrogations of any of the Detained Petitioners while this litigation is pending;

13.     Order Respondents to cease all acts of torture and cruel, inhuman, and degrading treatment of Detained Petitioners;

14.     Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States, and customary international law;

15.     Order and declare that the prolonged, indefinite, and restrictive detention of the Detained Petitioners without due process is arbitrary and unlawful and a deprivation of liberty

16.    Grant such other relief as the Court may deem necessary and appropriate to protect the Detained Petitioners' rights under the common law, the U.S. Constitution, federal statutory law, and international law.

Respectfully submitted,

Counsel for Petitioners/Plaintiffs:

Wesley R. Powell (WP7857)
Patrick Train-Gutiérrez
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 100166
(212) 309-1000
(212) 309-1100 (facsimile)

Thomas R. Snider
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500
(202) 778-2201 (facsimile)

*Of Counsel*
Barbara J. Olshansky
Director Counsel
Tina Monshipour Foster
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

October 27, 2005

## CERTIFICATE OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Detained Petitioners, pursuant to L.Cv. R. 83.2(g), that they are representing

the Detained Petitioners without compensation.

Respectfully submitted,

Wesley R. Powell (WP7857)
Patrick Train-Gutiérrez
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 100166
(212) 309-1000
(212) 309-1100 (facsimile)

Thomas R. Snider
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500
(202) 778-2201 (facsimile)

October 27, 2005

99997.027530 WASHINGTON 549286v3