IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISSAM HAMID ALI BIN ALI AL JAYFI, *et al.*, )<br>)<br>Petitioners/Plaintiffs, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, *et. al.*, )<br>)<br>)<br>Respondents/Defendants. )<br>) | Case No. 1:05-CV-02104 (RBW) |

**PETITIONERS' PARTIAL CONSENT TO RESPONDENTS' MOTION TO STAY
PROCEEDINGS AND REPLY TO RESPONDENTS' OPPOSITION TO MOTION FOR
WRIT OF HABEAS CORPUS OR ORDER TO SHOW CAUSE**

I.   **Petitioners Will Consent to A Stay of These Proceedings Subject to Several Limited, Essential Conditions**

Petitioners recognize that the Judges of this District have consistently stayed the Guantánamo detainee cases assigned to them — most, subject to certain limitations — pending the outcome of the appeals of *Khalid v. Bush, Boumediene v. Bush*, 355 F.Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C.Cir. Mar. 2, 2005), and *In re Guantánamo Detainee Cases*, 355 F.Supp. 2d 443 (D.D.C. 2005), *appeal on petition for interlocutory appeal docketed at* No. 05-5064 (D.C.Cir. Mar. 10, 2005). Under these circumstances, Petitioners will not oppose entry of an appropriate order staying these proceedings until those appeals are resolved.

Any stay order, however, should be subject to several modest but essential limitations.[1] *First*, Respondents should be required to produce factual returns for each Petitioner within a reasonable timeframe. These returns are vitally important to our representation of Petitioners. As Judge Kennedy wrote in requiring production of returns in one Guantánamo case notwithstanding a stay of the action, "petitioners' counsel must have access to [the returns] in order to develop a meaningful understanding of the basic factual allegations … and prepare for consultation with their clients." *Al-Mohammed v. Bush*, 05-CV-00247, slip op. at 2-3 (D.D.C. Apr. 30, 2005). So too here.

*Second*, while Petitioners wait for their factual returns (we propose sixty days for this), Respondents should be required to provide the following unclassified information concerning each Petitioner:

- *whether he is alive and being held in Guantánamo.* Respondents already have indicated that two Petitioners are held in Guantánamo but state they have been unable to identify the other four. *See* Respondents' Motion to Stay ("Stay Motion") at 2, note 2. Petitioners simply propose that Respondents be required to work with Petitioners to resolve the identification and location of the remaining four Petitioners.

- *whether he has completed his Combatant Status Review Tribunal ("CSRT") and, if so, has been designated an Enemy Combatant or given some other status.* As discussed further below, the Department of Defense has completed the CSRT process with respect to most, if not all, Guantánamo detainees. We ask that Respondents be required to confirm whether each Petitioner has been put through a CSRT and disclose the resulting designation for each.

- *his Internee Classification Number ("ICN").* This is a number the DOD assigns to each detainee and uses to identify him on an ongoing basis. We request

---

[1] Petitioners agree with Respondents that the protective order (and subsequent supplemental orders) applicable to the other Guantánamo detainee cases should be entered here. *See* Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba and related orders cited in Motion to Stay at 2 "Protective Order").

production of Petitioners' ICNs for use in addressing legal mail and other communications to them.

*Third*, the stay order should require Respondents to preserve all potentially relevant documents and information concerning Petitioners and the circumstances of their capture and detention. One of the risks of staying Petitioners' *habeas* action is that, with the passage of time, relevant information could be lost or destroyed in the ordinary course of Respondents' business. The potential prejudice to Petitioners from this loss of evidence is all too plain. For these reasons, inclusion of a preservation obligation in any stay order is necessary "to preserve the status quo pending resolution of [the Guantanamo] appeals." Order, *Abdah v. Bush*, 04-CV-1254 (June 10, 2005)(HHK)(entering preservation order). By contrast, an obligation to preserve evidence imposes no burden or prejudice on Respondents. *See* Order, *Al-Marri v. Bush*, 04-CV-2035 (March 7, 2005)(GK)("entering a preservation order will inflict no harm or prejudice on [Respondents]."); Order, *Ali Ahmed v. Bush*, 05-CV-1678(November 16, 2005)(GK) (ordering the preservation and maintenance of "all evidence, documents and information, *without limitation* regarding the treatment, detention and grounds for detention" in conformity with Fed. R. Civ. P. 33 for petitioner.) (emphasis added); Memorandum Opinion and Order, *El-Banna v. Bush*, 04-CV-1144 (July 18, 2005) (RWR) ("[t]he requested order imposes no greater obligation on respondents than the federal discovery rules' preservation obligations impose on a litigant in a typical civil lawsuit.") Accordingly, and as reflected in the accompanying Proposed Stay Order, Petitioners request that any stay order include the requirement that:

> Respondents shall preserve and maintain all evidence, documents and information, without limitation, now or ever in Respondents' possession, custody or control, regarding the individual detained petitioners.

Memorandum Opinion and Order, *El-Banna v. Bush,* 04-CV-1144 (July 18, 2005)(RWR)(granting motion for entry of preservation order pending stay.)[2]

Petitioners have filed herewith for the Court's consideration a Proposed Stay Order that provides for each of these conditions.

II.  **Respondents' Arguments Against Production of Factual Returns Are Unavailing; Both the Returns and The Interim Information Sought Can Be Provided Promptly With Minimal Burden**

In their Motion to Stay, Respondents concede that other Judges in this District have required production of factual returns in connection with ordering the stay of Guantánamo detainee cases. *See* Motion to Stay at 13-14, and cases cited therein.[3] Yet, Respondents point to no specific examples of how this obligation has disrupted their day-to-day business or otherwise unduly burdened them. Rather, Respondents recite, in the most general of terms, "the immense logistical burden to process and file the returns." *Id.* at 13. This is gross overstatement. A factual return for a detainee is simply "the record of proceedings before the [CSRT]." *Id.* at 12, note 9. Those proceedings already took place. The record of those proceedings already exists and is in the hands of the DOD. *See id.* at 12.

Moreover, classification decisions with respect to information presented during the CSRTs generally takes place before the start of those proceedings, and those proceedings are subject to legal review when they are completed and the detainee's status is determined. *See,*

---

[2] Because, in Petitioners' view, an interim requirement to preserve evidence is inextricably linked to the relief Respondents request in their Motion to Stay, Petitioners advance it as a modification to Respondents' proposed stay order, rather than separately moving for entry of a preservation order. If the Court requires a separate motion on this issue, Petitioners of course will file it promptly.

[3] Petitioners note that certain Judges of this District have declined to require factual returns during the pendency of the stay. *See* Motion to Stay at Note 10.

*e.g.,* Memorandum from Bree A. Ermintrout to Director of CSRT, Jan. 19, 2005, *in* Factual Return for Petitioner Abdul-Salam Ali Abdularahman Al-Hela, *Al-Hela v. Bush*, 05-CV-01048 (RMU)(D.D.C. June 15, 2005)(Attached as Exhibit A to Declaration of Wesley R. Powell Declaration ("Powell Declaration"); Memorandum from James R. Crisfield Jr. to Director of CSRT, October 14, 2004, *Factual Return for Petitioner Ridouane Khalid, Khalid v. Bush*, 04-CV-1142 (RJL) (D.D.C, Oct. 18, 2004) (Attached as Exhibit B to Powell Declaration). At this stage, what remains in producing the factual returns is largely ministerial, and certainly can be accomplished within a reasonable period of time, like 60 days. Moreover, to the extent Respondents need additional time to prepare a redacted return for public filing, Petitioners would agree to accept production of the classified return at the secure facility (designated in the Protective Order) in sixty days, and Respondents could file a redacted version later. Finally, the limited, unclassified information on Petitioners' status we seek in the interim could be produced in very short order by letter or email.

Respondents claim that the burden associated with production of factual returns — however minimal — is unjustified because it will prove "unnecessary" if the Court of Appeals rules in their favor in the pending appeals. Motion to Stay at 12. Of course, Respondents tried this argument before Judge Green in seeking to avoid production of factual returns while their motions to dismiss were pending the fall of 2004, but Judge Green ordered the returns produced, notwithstanding the possibility that a decision on the motion could moot the returns. Moreover, as Respondents recognize, a number of other Judges in this District have ordered factual returns produced, while otherwise staying Guantánamo detainee proceedings. *See* Motion to Stay at 13-14, and cases cited therein. And, any risk that production of these returns will prove "unnecessary" as a result of the pending appeals is outweighed by Petitioners' need to proceed

with an investigation of Respondents' allegations (as reflected in the returns) against them now, so that they may proceed immediately with a challenge to their detention in the event the Court of Appeals rules in favor of the detainees.

Finally, Respondents complain, without basis, that providing returns here would risk disclosure of the classified information contained in them. Of course, the only persons eligible to review classified returns are counsel who have received national security clearance and who submit to the Protective Order that all parties agree should apply to this case. And, in granting security clearance to an individual lawyer, the Government indicates that "the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp 1, 14 (D.D.C. 2004). Accordingly, Respondents cannot credibly claim that undue risk of exposure will result if lawyers, whom the Government considers trustworthy, review classified information subject to the restrictions of the Protective Order.

## CONCLUSION

For the reasons discussed above, Petitioners consent to the proposed stay of proceedings, subject to the reasonable conditions outlined above.

Dated: November 29, 2005
      New York, NY

Respectfully submitted,

Counsel for Petitioners/Plaintiffs:

_____
Wesley R. Powell*
wpowell@hunton.com
Patrick Train-Gutiérrez*
ptrain-gutierrez@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 100166
(212) 309-1000
(212) 309-1100 (facsimile)

Thomas R. Snider
tsnider@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500
(202) 778-2201 (facsimile)

*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

---

\*      Not admitted in the District of Columbia District but qualified to practice as *pro bono* counsel pursuant to L.Cv.R. 83.2(9).