IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISSAM HAMID ALI BIN ALI AL JAYFI, ) <br>     Detainee, ) <br>     Guantánamo Bay Naval Station, ) <br>     Guantánamo Bay, Cuba, ) <br>      ) <br> HAMID ALI AL JAYFI, ) <br> As Next Friend of ISSAM HAMID ALI BIN ) <br> ALI AL JAYFI, ) <br>      ) <br> OTHMAN ALI MOHAMMED AL ) <br> SHAMRANY,    Detainee, ) <br>     Guantánamo Bay Naval Station, ) <br>     Guantánamo Bay, Cuba ) <br>      ) <br> ALI MOHAMED OMAR AL SHOMRANY, ) <br> As Next Friend of OTHMAN ALI ) <br> MOHAMMED AL SHAMRANY, ) <br>      ) <br> KHALID MOHAMMED AL THABBI, ) <br>     Detainee, ) <br>     Guantánamo Bay Naval Station, ) <br>     Guantánamo Bay, Cuba, ) <br>      ) <br> MUHAMMED AHMED MUHAMMED AL ) <br> GHURBANY, As Next Friend of KHALID ) <br> MOHAMMED AL THABBI, ) <br>      ) <br> ALI HAMZA AHMED SULIMAN ) <br> BAHLOOL,  Detainee, ) <br>     Guantánamo Bay Naval Station, ) <br>     Guantánamo Bay, Cuba, ) <br>      ) <br> ABDOUL MOHAMMED AHMED ) <br> BAHLOOL, ) <br> As Next Friend of ALI HAMZA AHMED ) <br> SULIMAN BAHLOOL ) <br>      ) <br> SALEH MOHAMMED SELEH AL ) <br> THABBII, a/k/a SALEH MOHAMMED AL ) <br> DHABI, ) <br>     Detainee, ) <br>     Guantánamo Bay Naval Station, ) <br>     Guantánamo Bay, Cuba, ) <br>      ) <br>      ) <br>      ) <br>      ) | Civ. Act. No. 1:05-cv-02104-RBW |

FATMAH QHASIM AL AHMADI )
As Next Friend of SALEH MOHAMMED )
SELEH AL THABBII )
)
ABDUL AL QADER AHMED HUSSAIN, )
    Detainee, )
    Guantánamo Bay Naval Station )
    Guantánamo Bay, Cuba, )
)
ABDULGADER AHMED HASIN )
ABOBAKER )
As Next Friend of ABDUL AL QADER )
AHMED HUSSAIN )
)
          Petitioners/Plaintiffs, )
)
v. )
)
GEORGE W. BUSH, )
    President of the United States )
    The White House )
    1600 Pennsylvania Ave., N.W. )
    Washington, D.C. 20500 )
)
DONALD RUMSFELD, )
    Secretary, United States )
    Department of Defense )
    1000 Defense Pentagon )
    Washington, D.C. 20301-1000 )
)
ARMY BRIG. GEN. JAY HOOD, )
    Commander, Joint Task Force )
    JTF-GTMO )
    APO AE 09360; and )
)
ARMY COL. MIKE BUMGARNER, )
    Commander, Joint Detention )
      Operations Group – JTF-GTMO )
    JTF-GTMO )
    APO AE 09360, and )
)
Mr. JOHN D. ALTENBURG, JR., )
    Appointing Authority for Military )
      Commissions )
    1851 South Bell Street )
    Arlington, VA 22202 )
)
          Respondents/Defendants. )

## SUPPLEMENTAL PETITION OF ALI HAMZA AHMAD SULIMAN BAHLOOL FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF

One of the above named Petitioners, Ali Hamza Ahmad Suliman Bahlool ("Bahlool") through his undersigned attorneys, files this supplemental petition against Respondents for habeas and other relief. Respondents have held Bahlool for more than three years without ever demonstrating a basis for his detention. They have now charged Bahlool with "crimes" that they have made up after the fact. Respondents intend to try Bahlool for those "crimes" before a military panel that they have appointed and over which they exercise reviewing authority. The prospect of this lawless proceeding provides no basis for the continued detention of Bahlool.

In support of his Petition, Bahlool alleges as follows:

## INTRODUCTION

1.    Petitioner Ali Hamza Ahmad Suliman Bahlool is currently incarcerated at United States Naval Station, Guantanamo Bay, Cuba (hereinafter "Guantanamo Bay").    Upon information and belief, Bahlool was seized in or about December 2001, in Afghanistan, and was subsequently transferred to the custody of U.S. military and intelligence personnel.  Bahlool was not engaged in combat against U.S. or other forces at the time of his seizure.

2.    Bahlool has been unlawfully detained at the direction of the Respondents for over three years.  During the period of his initial seizure and subsequent confinement Respondents have authorized, directed and/or permitted illegal, abusive and coercive conditions of confinement and interrogation to be directed against Bahlool.[1]

3.    There is no basis for Bahlool's detention.  At no time did Bahlool engage in any criminal or terrorist conduct.  Nor did he kill, injure, fire upon, or direct fire upon, any U.S. or Coalition Forces.  Nor did he attempt any such conduct.  He did not at any time commit any criminal violations, or any violations of the law of war.  Nor did he ever enter into any agreement with anyone to do so.  Accordingly, Bahlool brings this action seeking a writ of habeas corpus to secure his release from Respondents' unlawful detention.

4.    Lacking any lawful basis for Bahlool's continued detention, Respondents now seek to justify Bahlool's detention by subjecting him to "trial" by military commission (the "Commission") on a purported war crimes charge of Respondents' own creation and definition, never before recognized under international law, and using a procedure that also has been made

---

[1]    The information provided in this Complaint has been compiled from several sources, including counsel's personal knowledge, the Charge Sheet lodged against Bahlool by the U.S. Department of Defense (attached hereto as Exhibit 1), other information made public by the government, media reports, and counsel's independent investigation.  It does not include any privileged information from Bahlool, or any confidential discovery or CLASSIFIED information that the government has provided to counsel.

up out of whole cloth.  Because Respondents' war crimes charge is indisputably invalid and the Commission's process and procedures unlawful, Bahlool seeks habeas relief with respect to his unlawful detention and trial by the Commission.

5.    As set forth more fully below, Bahlool also challenges numerous other unlawful aspects of his continued detention by Respondents, including, without limitation (i) Respondents' failure to afford Bahlool the protections of the Geneva Conventions and other applicable law to which he is presumptively and actually entitled, (ii) Respondents' denial of Bahlool's rights to due process and equal protection of the laws, (iii) Bahlool's continued detention in derogation of his right to speedy trial under applicable law, (iv) Respondents' reliance, in charging and detaining Bahlool for trial, on statements garnered through the use of illegal, improper, abusive and coercive means and methods of interrogation and treatment directed at Bahlool and other detainees, and (v) various other deficiencies in the  Commission and/or combatant status review tribunal process and procedures.

6.    Last year, the Supreme Court explained that  "[c]onsistent with the historic purpose of the writ, this Court has recognized the federal courts' power to review applications for habeas relief in a wide variety of cases involving Executive detention, in wartime as well as in times of peace." *Rasul v. Bush*, 542 U.S. at 474, 124 S. Ct. 2686, 2692-93 (2004).

7.    This is one such application.  Bahlool invokes the protection of this Court and seeks the Great Writ in order to secure his release and to vindicate the fundamental rights recognized by the Supreme Court. *See Hamdi v. Rumsfeld,* 542 U.S. at 545, 124 S. Ct. 2633 n. 15 (2004);  *id.* at 2655 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment) "Petitioner's allegations -- that. . .they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the

United States, without access to counsel and without being charged with any wrongdoing unquestionably describe 'custody in violation of the Constitution or laws or treaties of the United States.'" 28 U.S.C. § 2241(c)(3); *Rasul*, 542 U.S. at 488, 124 S. Ct. at 2700 (Kennedy, J., concurring) ("[a] necessary corollary of [*Johnson v.*] *Eisentrager* [, 339 U.S. 763 (1950)] is that there are circumstances in which the courts maintain the power and the responsibility to protect persons from unlawful detention even where military affairs are implicated"), citing *Ex parte Milligan*, 4 Wall. 2, 18 L.Ed. 281 (1866).

## PARTIES

8.    Petitioner Bahlool, born in 1968 in Yemen, is a citizen of Yemen. The United States military assumed custody of Bahlool in or about December 2001, and he has remained in the custody of the United States continuously since that date.

9.    Respondent George W. Bush is President of the United States, and executed the Military Order that created the military commissions and under which Bahlool is being detained. Respondent President Bush also designated Bahlool a person eligible for trial by the Commission, which is why Bahlool is scheduled for an unlawful trial before the Commission.

10.    Respondent Donald H. Rumsfeld is the Secretary of Defense of the United States, and commands all aspects of the United States Military, including the Office of Military Commissions established by the applicable Presidential Military Order. Respondent Secretary Rumsfeld has custodial authority over Bahlool and is ultimately in charge of the prosecution of Bahlool by the Commission.

11.    Respondent Brigadier General Jay Hood is the Commander of Joint Task Force Guantanamo and, in that capacity, is responsible for Bahlool's continued and indefinite detention at Camp Echo.

12.    Colonel Mike Bumgarner is the Commander of Joint Detention Operations Group and in that capacity, is responsible for the U.S. facility where Bahlool is presently detained. He exercises immediate custody over Bahlool pursuant to orders issued by Respondent President Bush, Respondent Secretary Rumsfeld and Respondent General Hood.

13.    Respondent John D. Altenburg, Jr., is the Appointing Authority for Military Commissions, and in that capacity exercises authority over the entire Commission process.[2]

## JURISDICTION

14.    This action arises under the Constitution, laws and treaties of the United States, including Articles I, II, III, and VI and the 5th and 6th Amendments, 28 U.S.C. §§1331, 1350, 1361, 1391, 2241, and 2242, 5 U.S.C. §702, the All Writs Act (28 U.S.C. §1651), 42 U.S.C. §1981, the *Bivens* doctrine [*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)], and Geneva Convention (III), as well as international law more generally.

15.    This Court possesses subject matter jurisdiction under 28 U.S.C. §§ 1350, 1361 and 1391,5 U.S.C. § 702, as well as the habeas corpus statute, 28 U.S.C. §2241, and the All Writs Act, 28 U.S.C. §1651. In addition, the Court may grant the relief requested under Art. 2(a)(12) of the UCMJ, 10 U.S.C. §802(a)(12), which grants jurisdiction over a petition for judicial review filed by or on behalf of parties incarcerated at Guantanamo. As explained above, the Supreme Court expressly held that this Court has subject matter jurisdiction to consider a habeas petition by a Guantanomo detainee in *Rasul*.

---

[2]    This Supplemental Petition adds Respondent Altenburg, since his responsibility for Bahlool's detention and proceedings before the Commission was unknown to counsel prior to the filing of the initial Petition in this matter.

16.     This Court has personal jurisdiction over the parties.    Respondents have substantial contacts in this District.

17.     Venue is proper in this Court under 28 U.S.C. §§1391(b) and (e) since a substantial part of the events, acts, and omissions giving rise to the claim occurred in this District and a Respondent may be found in the District. *See Rasul*, 542 U.S. at 484, 124 S. Ct. at 2698; *Padilla*, 542 U.S. at 426, 124 S. Ct. 2711. *See also Gherebi v. Bush*, 374 F.3d 727 (9th Cir. 2004) (amended opinion) (transferring Guantanamo Bay detainee's action to the District of the District of Columbia in light of *Padilla*).

## ALLEGATIONS COMMON TO ALL COUNTS

18.     Following the September 11, 2001 attack upon targets in the United States, the United States commenced military operations in Afghanistan on or about October 7, 2001 against Taliban and *al Qaeda* targets within Afghanistan.    That activity was augmented twelve days later on October 19, 2001, with ground operations by U.S. forces.    Through December 2001, the U.S. military action initially involved a small number of Special Forces operating on the ground in Afghanistan, and working with forces of the Northern Alliance, a consortium of armed and organized Afghan foes of the Taliban government.    A substantial air campaign supported these units as well as a small number of Special Forces from other nations (hereinafter collectively the "Coalition Forces").    The Northern Alliance and Coalition Forces operated in full cooperation and coordination in their joint campaign against the Taliban and *al Qaeda*.

19.     The above military activities were authorized by Congress in a "use of force" resolution passed on September 18, 2001:

> [t]hat the President is authorized to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or

persons.

*See* Authorization for Use of Military Force (hereinafter the "AUMF"), Pub.L. 107-40, 115 Stat.

224 (2001). *See also Rasul*, 542 U.S. at 470, 124 S. Ct. at 2690 ("[a]cting pursuant to that

authorization, the President sent U.S. Armed Forces into Afghanistan to wage a military

campaign against *al Qaeda* and the Taliban regime that had supported it").

20.     Pursuant to the AUMF, the United States, in support of, and in conjunction with,

the Northern Alliance, commenced military action against Afghanistan's Taliban government.

Within ninety days, the Taliban government was defeated and Coalition Forces and the Northern

Alliance had captured and/or apprehended a number of persons allegedly associated with the

Taliban and/or *al Qaeda*. Upon information and belief among those persons was Bahlool, who

was seized by the Northern Alliance and subsequently transferred to the custody of the U.S.[3]

Petitioner Bahlool was not engaged in combat against U.S. or other forces at the time of his

seizure.

21.     Following his removal from Afghanistan by U.S personnel, Bahlool was confined

on U.S. Navy vessels for several weeks. Upon information and belief, Bahlool was then

transported by U.S. military aircraft to Guantanamo Bay in February 2002. Upon arrival Bahlool

was placed in a special facility reserved for alien detainees denominated "enemy combatants" by

---

[3]     In *Hamdi* the Court found that the AUMF provided authority to seize Hamdi on the battlefield in Afghanistan. *See* 542 U.S. at 516, 124 S. Ct. at 2639. In *Hamdi*, however, the Court pointed out that "the basis asserted for detention by the military is that Hamdi was carrying a weapon against American troops on a foreign battlefield; that is, that he was an enemy combatant." 524 U.S. at 522, 124 S. Ct. at 2642. *See also id. at* 2637; *Hamdi v. Rumsfeld*, 316 F.3d 450, 459 (4th Cir. 2003), *vacated by* 542 U.S. at 507, 124 S. Ct. 2633 (it was "undisputed that Hamdi was captured in a zone of active combat in a foreign theater of conflict"). Here, in contrast, there has not been any such allegation made with respect to the seizure of Bahlool. *See* Charges (attached hereto as Exhibit 1). In any event, the Supreme Court emphasized that regardless whether the seizure was authorized under the AUMF, "[c]ertainly, we agree that indefinite detention for the purpose of interrogation is not authorized." 542 U.S. at 521, 124 S. Ct. at 2641. *See also Padilla*, 542 U.S. at 465, 124 S. Ct. at 2735 & n. 8 (Stevens, J., dissenting).

Respondent President Bush and/or the Department of Defense. Initially he was confined at Camp X-Ray, and then subsequently at Camp Delta, before he was moved to his current location in Camp Echo.

22.    During Bahlool's lengthy confinement by the U.S. and its proxies, Bahlool has been the subject of continued, intensive, and uncounseled interrogation, which ended only after Bahlool was detailed counsel for his Military Commission. On information and belief, this interrogation has included physical and psychological abuse.

23.    A description of some of the abusive interrogation methods employed against Bahlool and other detainees are set forth in the statements from three British detainees who have since been released from Guantanamo Bay. (Their statements released publicly in the United Kingdom August 3, 2004 are attached hereto as Exhibit 2. The entire composite statement is available at http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04. pdf.)

24.    The coercive and illegal techniques used against Bahlool constitute torture under the definition set forth in Article 1 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* February 4, 1985, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85 (hereinafter "CAT") ("any act by which severe pain or suffering . . . is intentionally inflicted on a person for such purposes as obtaining from him . . . information or a confession . . . when such pain is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity[.]") *See also Khouzam v. Ashcroft*, 361 F.3d 161, 168-69 (2d Cir. 2004). The United States became a party to the CAT in 1994.

25.    After more than a year and a half of confinement and interrogation, on July 3, 2003, Respondent President Bush designated Bahlool as a person eligible for trial before the Commission. The Commission was established by Presidential Military Order, dated November 13, 2001, *see* 66 Fed. Reg. 57,833 (November 13, 2001) (hereinafter "PMO"), and the August 31, 2005, Military Commission Order No. 1 (hereinafter "MCO No. 1"). (A copy of the PMO is attached hereto as Exhibit 3; a copy of MCO No. 1 is attached hereto as Exhibit 4.)[4] On June 10, 2004, a charge against him was publicly released. It was approved by Respondent Altenburg on June 28, 2004. Bahlool was charged with Conspiracy. *See United States v. al Bahul,* Charge Sheet (attached hereto as Exhibit 1). Bahlool's charge was referred to the Commission on June 28, 2004. (A copy of that referral is attached hereto as Exhibit 5).

26.    Some of the procedures for the military commissions under which Bahlool will be tried were set up in the MCO No. 1 (see Exhibit 4). Many other procedures will be made up as the proceedings go along, precluding the accused from having anywhere close to a full understanding of the procedures under which he will be tried. One such example, evident from the nascent proceedings that have occurred thus far in the Commission process, is that a member of the Commission can be challenged "for good cause" – but what constitutes good cause is not defined under Commission rules. Nor are the standards by which "good cause" is evaluated articulated in the Commission rules. The Presiding Officer acknowledged that gap, and declined to define "good cause" conclusively, instead directing counsel to brief this issue for the Appointing Authority.

27.    Even those procedures that have been clearly established are deficient and will not result in a full and fair trial. Under these existing procedures, Respondent Secretary Rumsfeld

---

[4]    The Presidential designation of Bahlool is CLASSIFIED and thus is not included here.

has appointed an Appointing Authority, Respondent John Altenburg, a retired Army officer who is currently employed by the Department of Defense in a civilian capacity. The Appointing Authority will in turn appoint members of the Commission who will decide questions of both law and fact. *Id.* at ¶ 4. Only the presiding officer will be required to have any legal experience. The defendant will have no peremptory challenges with respect to members of the Commissions. Thus, Respondent Secretary Rumsfeld and his appointee, who are investigating and prosecuting Bahlool, will ultimately be responsible for choosing the panel that will judge him. *Id.* at ¶ 6.

28.    During the military commission proceedings, there is no bar to admission of evidence that courts normally deem unreliable -- such as statements coerced from Bahlool at a time when he had no counsel, or statements coerced from other detainees. Indeed, witness statements can be used even if the witnesses are not available to testify and their testimony is presented as unsworn hearsay.

29.    There will be no direct appeal from a decision of the Commission. *Id.* The proceedings will be reviewed, but not in federal court. The first review will be conducted by the Appointing Authority (who appointed the Commission members, brought the charges and decided any interlocutory legal issues). *Id.*[5] The second review will be by a panel consisting of four members already appointed by the Respondent Secretary of Defense, including two members who were on the very panel that crafted the trial procedures, *id.*, another member who has written an op-ed piece stating that, "[i]t is clear that the September 11 terrorists and

---

[5]    The MCO's clear requirement that case-dispositive motions be certified to the Appointing Authority is in irreconcilable conflict with the PMO's directive that the Commission is the determinant of all issues of "law and fact." Thus, the Commission rules themselves fail to adhere to the PMO, and are invalid. MCO No. 1, § 4(A)(5)(d).

detainees, whether apprehended in the United States or abroad, are protected neither under our criminal-justice system nor under the international law of War," and a fourth member who is a close friend of Respondent Secretary Rumsfeld.[6] Subsequent review will be by the Secretary of Defense and/or the President. *Id.* Bahlool's accusers will thus be the "appellate court." Thus, not only has Bahlool been held without trial for over three years but there is no future prospect of a trial by an impartial tribunal using only reliable evidence.   Moreover, even if the initial factfinder were to overcome its bias and find Bahlool not guilty, this would not guarantee an acquittal. At any stage in the review process, the reviewers can send the case back for further proceedings -- perhaps even after a finding of not guilty.

30.    Just as there has not been and will not be an unbiased determination that Bahlool is guilty of any crime, there also has been no determination by a neutral tribunal that Bahlool can justifiably be held as an enemy combatant. On June 28, 2004, the United States Supreme Court decided *Hamdi,* 542 U.S. at 507, 124 S. Ct. 2633 (2004), in which it determined that individuals could not be detained as enemy combatants unless such a determination was made by a neutral tribunal that accorded them due process.

31.    Subsequently, the United States created a Combatant Status Review Tribunal ("CSRT") to make determinations as to whether those held were enemy combatants. The CSRT was hastily formed in the wake of the Supreme Court's decisions in *Rasul* and *Hamdi*, and does not qualify as the neutral tribunals that satisfies the requirements of due process. For example,

---

[6]    Stephen J. Fortunato, Jr., *A Court of Cronies*, In These Times (Jun. 28, 2004) *available at* http://www.inthesetimes.com/site/main/article/a_court_of_cronies.

the CSRT fails even to meet the standards for Article 5 hearings as set forth in U.S. Army regulations.[7]

32.    The CSRT varies from both the Army regulations and *Hamdi* (and due process generally) materially and dispositively, including with respect to, *inter alia*: (1) the standard of proof required [Regulation 190-8, §1-6(e)(9)'s preponderance of the evidence standard as opposed to the CSRT's "rebuttable presumption" that the detainee is an enemy combatant][8]; (2) the availability of an appeal by the government of a ruling favorable to the detainee; (3) the categories in which a detainee may be placed (*i.e.*, the CSRT fails to allow for POW status, but instead purport to determine only whether or not a detainee is an "enemy combatant"); (4) the detainee's right to counsel and/or representation by a personal representative of choice before the Tribunal; (5) whether the hearings are open to the public; (6) the government's reserved power to rescind or change the conditions of the Tribunals at its whim; (7) the composition of the Tribunal(s) (in contrast with *Hamdi's* requirement of "neutral decisionmaker[s,]" 542 U.S. at 534, 124 S. Ct. at 2648); and (8) even the definition of "enemy combatant." These deficiencies are individually and collectively fatal to the CSRT.[9]

33.    Moreover, while there may have been a CSRT determination for Bahlool, he has now been held for nearly four years without a determination by a neutral tribunal that he is an

---

[7]    *See* Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees, Army Regulation 190-8, §1-6 (1997).

[8]    Indeed, the Order implementing the Combatant Status Review Tribunals informs tribunal members that the detainee's status has already been predetermined by their superiors: "[e]ach detainee subject to this Order has been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense." *See* Dep't of Defense Order No. 651-04, (July 07, 2004), *available at* http://www.defenselink.mil/releases/2004/nr20040707-0992.html (attached hereto as Exhibit 6).

[9]    Bahlool has been subjected to a CSRT, although it failed to make a determination regarding his legal status. On July 16, 2004, Bahlool's then-detailed military counsel requested to serve as his personal representative (a copy of which is attached hereto as Exhibit 7). This request was summarily denied and counsel was informed *after the fact* of the result of the hearing (a copy is attached hereto as Exhibit 8).

enemy combatant or a trial to determine whether he has committed war crimes. This delay has greatly prejudiced the likely result of any proceeding that would now occur.

34.    On information and belief, the government has relied upon and intends to use at trial, statements by persons who were detainees at Guantanamo Bay, but whom have since been released.

35.    Thus, the prejudice Bahlool has suffered as a result of the denial of his rights to a speedy trial have been multifaceted:

    (a)    he was denied access to counsel for approximately 2 1/2 years, during which time he was interrogated under coercive and illegal conditions;

    (b)    persons whose statements against Bahlool may be introduced by the government at the Commission trial are no longer at Guantanamo Bay, and therefore, are no longer accessible as witnesses. As a result, not only will the government attempt to admit such statements in evidence without providing Bahlool any opportunity for cross-examination, but those persons will not be available to be called as witnesses. Moreover, with respect to other former detainees whom the government does not intend to call (or to introduce statements from), but whom Bahlool would call as witnesses, the inordinate delay in providing Bahlool an appropriate hearing has rendered them unavailable as well.

36.    Consequently, as a result of the denial of Bahlool's speedy trial rights, he will be deprived of the rights to confront the evidence against him, and to present his defense at Commission proceedings. The absence of a speedy trial is another ground for Bahlool's release.

## CLAIMS FOR RELIEF

### COUNT ONE

### RESPONDENTS MAY NOT DETAIN BAHLOOL FOR TRIAL BEFORE AN INVALIDLY CONSTITUTED MILITARY COMMISSION

37.    Bahlool re-alleges and incorporates by reference paragraphs 1 through 36 above.

38.    The Commission in this case is invalid and improperly constituted, and the grant of subject matter jurisdiction to the Commission is overbroad and unlawful for at least the following reasons:

**A.    The Commission lacks jurisdiction because the President lacked congressional authorization to establish the Commission**

39.    The Supreme Court has noted that "[w]hen the President acts in absence of . . . a congressional grant . . . of authority, he can only rely upon his own independent powers." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637, 72 S. Ct. 863, 872 (1952) (Jackson, J. concurring). *See also Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2650 (2004). The Constitution expressly grants Congress the sole power to create military commissions and define offenses to be tried by them. The Constitution vests Congress, not the Executive, with "All legislative powers," with the power "[t]o define and punish offences against the Law of Nations" and "[t]o constitute Tribunals inferior to the Supreme Court." U.S. Const., Art. I § 8, cl. 9, cl. 10.

40.    Congress has not authorized the establishment of military commissions to try individuals captured during the Afghanistan war.    Accordingly, Respondents' detention of Bahlool for trial by the Commission is improper, unlawful and invalid as an *ultra vires* exercise of authority.    It exceeds the President's powers under Article II and thus violates the constitutional principles of separation of powers.

41.    Bahlool's status as a Yemeni citizen does not confer unlimited power on Respondents to operate outside of the Constitutional framework. The Supreme Court's assertion of jurisdiction for the federal courts in *Rasul* establishes indisputably that aliens held at the base in Guantanamo Bay, no less than American citizens, are entitled to invoke the federal courts' authority under 28 U.S.C. § 2241. *Rasul,* 542 U.S. at 481, 124 S. Ct. at 2696 ("[c]onsidering that the statute draws no distinction between Americans and aliens held in federal custody, there is

14

little reason to think that Congress intended the geographical coverage of the statute to vary depending on the detainee's citizenship") (footnote omitted). Thus, both Congress and the judiciary possess constitutional authority to check and balance the power of the Executive to act unilaterally. *Rasul*, 542 U.S. at 487, 124 S. Ct. at 2700 (Kennedy, J., concurring).

**B.    The Appointing Authority lacks power to exercise military authority to appoint a military commission.**

42.    Because there is no statute expressly stating who can appoint members of a Commission, the power to appoint members of a military commission is based upon the power to convene a general courts-martial. Only the Executive, the Secretary of Defense (or Secretaries of the other branches of the armed forces) or a commanding officer to whom the Secretary has delegated authority may convene a general court-martial.[10]

43.    In this case, the Respondent Secretary Rumsfeld purportedly has delegated authority to Respondent Altenburg to appoint the members of military commissions.

44.    Respondent Altenburg is a civilian, not a commissioned officer, and thus lacks the power to exercise military jurisdiction in any form.

45.    As a result, the Commission by which the Respondents intend to try Bahlool is improperly constituted and invalid, such that Bahlool is entitled to a writ of habeas corpus preventing his unlawful detention and trial before that improper tribunal.

**C.    The Commission lacks jurisdiction to try individuals at Guantanamo Bay.**

46.    Military commissions have no jurisdiction to try individuals far from the "locality of actual war." *See Milligan*, 71 U.S. at 127.

---

[10]    *See* 10 U.S.C. §822.

47.    The Commission that will try Bahlool is situated far outside any zone of conflict or occupation, and Bahlool's alleged conduct on which the charges are based did not occur at Guantanamo Bay.  As such, the Commission lacks authority to try Bahlool, and therefore, the Respondents lack the authority to continue to detain Bahlool for any purported trial at Guantanamo Bay.

**COUNT TWO**

**RESPONDENTS MAY
NOT DETAIN BAHLOOL FOR AN OFFENSE THAT HAS
BEEN CREATED BY THE PRESIDENT AFTER THE FACT**

48.    Bahlool alleges and incorporates by reference paragraphs 1 through 47 above.

49.    Respondent President Bush is attempting to try Bahlool for a crime that he created long after the alleged "offenses" were committed.

50.  The offense stated in the charge against Bahlool– conspiracy  – did not previously exist as an offense.  This "offense" was in effect created by the PMO, MCO No. 1, and Military Commission Instruction No. 2 (attached hereto as Exhibit 9), well after it was allegedly committed by Bahlool.  In essence, the government alleges that Bahlool is *criminally* liable for allegedly conspiring to participate in combat against the United States and its allies.  That has never been a criminal offense.

**A.    The Executive cannot define crimes.**

51.    Congress, not the Executive, has the authority to legislate under Article I of the Constitution.  This expressly includes the power "[t]o define and punish . . . Offences against the Law of Nations."  Absent Congressional authorization, the Executive lacks the power to define specific offenses.  If he attempts to do so, as he has done here, his actions are *ultra vires* and

16

violate the principles of separation of powers.   Accordingly, Bahlool may not be detained for trial on a newly-created offense established and defined solely by the President.

### B.    Crimes cannot be defined after the fact.

52.    In addition, any charges instituted by the Commission must constitute offenses under the law of war as it existed at the time the alleged conduct was committed.  Applying laws created after the conduct (such as the definition of offenses set forth in MCO No. 2 and that which has been included in the Charge against Bahlool) would violate the *ex post facto* clause of the Constitution (Art. 1, §9, cl. 3) and the principle that a person must have reasonable notice of the bounds of an offense.   (Offenses defined to criminalize the conduct of a single person or group of people -- such as those in MCO No. 2 also violate the Constitutional prohibition on bills of attainder.)

53.    Since the Charge does not allege an offense against Bahlool under the law of war as it existed at the time he allegedly committed these acts, Bahlool cannot be detained as a result of this Charge.  Accordingly, Bahlool is entitled to a writ of habeas corpus, and Bahlool should be released immediately.

### COUNT THREE

### RESPONDENTS MAY NOT DETAIN BAHLOOL FOR TRIAL ON A CHARGE OUTSIDE THE JURISDICTION OF THE MILITARY COMMISSION

54.    Bahlool re-alleges and incorporates by reference paragraphs 1 through 53 above.

55.    Bahlool's confinement is unlawful because he is being detained to face a charge before a Commission that is not empowered to hear and/or adjudicate the charge instituted against him.  Bahlool's continued detention purportedly to face trial on the charge leveled against him is unlawful because the charge is outside the parameters established by the Uniform Code of Military Justice (hereinafter "UCMJ"), 10 U.S.C. §801, *et seq.*, the statutory scheme that controls

military detentions and that limits the offenses triable by military commissions (even in instances where Congress has provided any jurisdiction to the military commissions, which it has not with respect to the conflict in Afghanistan).

56.     Under the UCMJ, military commissions may not hear and adjudicate any offenses other than those that are recognized by the traditional law of war or those that Congress has expressly authorized them to hear.  Here, the offense charged is not within either of these categories.

57.     The purported offense of conspiracy is not a valid offense triable by the Commission under recognized principles of the law of war, the UCMJ or any other statutory authorization.  Because civil law countries do not recognize a crime of conspiracy, conspiracy has never been part of the laws of war.  No international criminal convention has ever recognized conspiracy to violate the laws of war as a crime.  This includes the Geneva Conventions, as well as those setting up the international criminal tribunals in Yugoslavia and Rwanda, as well as the international criminal court.  Indeed, the government is making up charges that have been specifically rejected as violations of the laws of war -- including at Nuremburg, for example.

58.     As a plurality of the Supreme Court held in *Reid v. Covert*:

> [t]he jurisdiction of military tribunals is a very limited and extraordinary jurisdiction derived from the cryptic language in Art. I, § 8 [granting Congress the power to "define and punish . . . Offences against the Law of Nations"], and, at most, was intended to be only a narrow exception to the normal and preferred method of trial in courts of law. Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts, and, more important, acts as a deprivation of the right to jury trial and of other treasured constitutional protections.

354 U.S. 1, 21, 77 S. Ct. 1222, 1233 (1957).

59.     Since the charge does not allege any offense against Bahlool under the law of war or express statutory authority, the Commission lacks jurisdiction to try and/or punish Bahlool for

those offenses.  Accordingly, Bahlool is entitled to a writ of habeas corpus, and should be released immediately.

**COUNT FOUR**

**THE MILITARY COMMISSION
PROCEDURES VIOLATE BAHLOOL'S RIGHTS UNDER
STATUTORY, CONSTITUTIONAL, AND INTERNATIONAL LAW**

60.    Bahlool re-alleges and incorporates by reference paragraphs 1 through 59 above.

61.    Even if the Commission had jurisdiction, Bahlool's detention to stand trial before the Commission still would be unlawful because the Commission's procedures violate applicable principles of statutory, constitutional, and international law.

62.    In a series of "Military Commission Orders" (the "MCOs"), issued on March 21, 2002, Respondent Secretary Rumsfeld prescribed the procedural rules of these special military commissions.  If Bahlool is tried according to these proposed procedures, he will receive less protection than he is entitled to under American law, the Constitution, and international law and treaties.  The procedures set forth by the MCOs provide Bahlool with far less protection than those set forth in the UCMJ.  The MCOs violate Bahlool's rights to certain basic procedural safeguards.  The MCOs fail to provide Bahlool an impartial tribunal to adjudicate the charges against him or review those charges.  Bahlool's accusers effectively appoint the "judge and jury" and then review their decision.  And during these proceedings themselves, his accusers can introduce unreliable evidence of the worst sort -- unsworn allegations derived from coerced confessions with no right of confrontation.

63.    The absence of procedural protections makes the Commission inadequate as a matter of law.

19

### A.    The UCMJ

64.    Bahlool is entitled to the protections of the basic trial rights set forth by Congress in the UCMJ. By its own terms, the UCMJ applies to all persons, including Bahlool, who are detained within the territory or leased properties of the United States. And the UCMJ prohibits biased tribunals and the use of unreliable evidence of the sort the commissions intend to permit.

### B.    The Geneva Convention

65.    The Geneva Convention requires that prisoners of war ("POW"s), as defined by the Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, be treated with the same procedural protections as the soldiers of the country detaining them. [11] Under Article 5 of the Geneva Convention (III) ("Article 5"), Bahlool is entitled to be treated as a POW until a competent tribunal has determined otherwise.[12] As a result, he is entitled to the procedural protections that would apply in a court martial.

66.    Even if Bahlool were not a prisoner of war, any proceeding would still have to meet the requirements of Common Article III of the Geneva Convention and Article 75 of Protocol I to the Geneva Conventions. These provide that conviction can only be pronounced by an impartial court respecting generally recognized principles of judicial procedure. Article 75 of Protocol I to the Geneva Conventions specifically provides that no one can be compelled to confess guilt. Bahlool's multi-year period of interrogation certainly defies the requirements of Article 75. These requirements are not met by the Commission.

---

[11]    Geneva Convention (III) Relative to the Treatment of Prisoners of War: August 12, 1949, 75 U.N.T.S. 135, *entered into force* Oct. 21, 1950. The Geneva Convention has also been codified in the UCMJ.

[12]    *See id.* at Art. 5.

### C.     The Due Process Clause

67.     The Constitution's guarantee of due process also guarantees Bahlool the basic trial rights he will be denied before the Commission.  A trial without these basic procedural safeguards lacks the fundamental fairness required in any judicial proceedings -- especially in criminal proceedings that can result in life imprisonment.

68.     Since the Commission procedures violate statutory, constitutional, and international law, and in so doing, fail to provide Bahlool with the basic safeguards necessary to constitute a fundamentally fair criminal proceedings, Bahlool is entitled to a writ of habeas corpus holding these proceedings to be illegitimate,  and should be released immediately.

### COUNT FIVE

### TRIAL BEFORE THE COMMISSION VIOLATES BAHLOOL'S RIGHT TO EQUAL PROTECTION OF THE LAWS OF THE UNITED STATES

69.     Bahlool re-alleges and incorporates by reference paragraphs 1 through 68 above.

### A.     Bahlool's detention violates the Equal Protection Clause.

70.     Bahlool is being detained by Respondents under the claimed authority of the PMO and MCO No. 1.  These Orders violate Bahlool's right to equal protection of the laws of the United States.  Under the PMO and MCO No. 1, Bahlool may be held for trial by the Commission only because of his alienage, since the Orders, by their terms, apply *only* to *non*-citizens.[13]   Consequently, thus detention runs afoul of the very purpose of the Equal Protection Clause of the United States Constitution.

---

[13]     Military Order of November 13, 2001 Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833, § 4 (November 13, 2001); Presidential Military Order, 66 Fed. Reg. 57,833 (Nov. 13, 2001) (attached as Exhibit 3).

71.     The Supreme Court has held that any discrimination against aliens not involving governmental employees is subject to strict scrutiny.  Here, the government cannot show a compelling governmental reason, advanced through the least restrictive means, for granting *citizens* access to the fundamental protections of civilian justice (including, *inter alia*, indictment, evidentiary rules ensuring reliability and fairness, a system consistent with previously prescribed rules developed by the legislature and enforced by impartial courts, a jury trial presided over by an independent judge not answerable to the prosecutor, and the right to an appeal before a tribunal independent of the prosecuting authority), but affording *non-citizens* a distinctly less protective and inferior brand of adjudication.  While the government may have latitude in differentiating between citizens and aliens in areas such as immigration, it has no such latitude with respect to criminal prosecutions.

72.     Thus, the blatant and purposeful discriminatory nature and impact of MCO No. 1 violates the Equal Protection clause.

### B.     Bahlool's detention violates 42 U.S.C. § 1981.

73.     Bahlool's detention for trial by the Commission also violates 42 U.S.C. § 1981.[14] That fundamental statutory provision guarantees equal rights for all persons to give evidence, to receive equal benefit of all laws and proceedings for the security of persons, and to receive like punishment.  Bahlool is being unlawfully detained for purposes of trial by the Commission solely because he is a non-citizen.  A citizen who committed the very same acts as Bahlool could

---

[14]     42 U.S.C. §1981(a) states in its entirety:
   [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

not be detained under the PMO and held for trial before the Commission.    Accordingly, Bahlool's detention for trial by the Commission on that discriminatory basis is unlawful.

74.    Respondents have detained Bahlool for trial before the Commission in violation of equal protection of the laws of the United States.

75.    Accordingly, Bahlool is entitled to a writ of habeas corpus, a determination that the Commission proceedings against him are unlawful, and he should be released immediately.

## COUNT SIX
## RESPONDENTS FAIL TO
## JUSTIFY HOLDING BAHLOOL AS AN ENEMY COMBATANT

76.    Bahlool re-alleges and incorporates by reference paragraphs 1 through 75 above.

77.    Just as the government has no authority to detain Bahlool for his alleged violation under a nonexistent version of the law of war, the government has no authority to detain Bahlool as an enemy combatant.    Respondents' actions to date in detaining Bahlool constitute a violation of the process accorded persons seized by the military in times of armed conflict as defined by Geneva Conventions III and IV and customary international law, as well as being inconsistent with the provisions set forth below.

   A.    **Under *Hamdi*, the Due Process Clause requires a neutral tribunal with significant procedural protections to determine whether Bahlool is an enemy combatant.**

78.    No tribunal has determined that Bahlool is an enemy combatant.

79.    The CSRT process and procedures that have now been established violate due process at least with respect to:  (1) the failure to adhere to an appropriate standard of proof; (2) the granting of an appeal to the government of a determination favorable to the detainee; (3) the failure to make an appropriate status determination by limiting the inquiry to consideration only of "enemy combatant" status; (4) the denial of a detainee's right to counsel or

other appropriate representation; (5) the denial of a public hearing; (6) the government's power to arbitrarily rescind or change the CSRT process and procedures; and (7) the failure to constitute the CSRT in a manner to assure a neutral decision maker.

### B.    The Geneva Convention and army regulations require a determination by a fair tribunal.

80.    Under Article 5 of the Geneva Convention, Bahlool is entitled to a "competent tribunal" to determine whether he can be held as an enemy combatant.[15]  The same procedural deficiencies that render the CSRT proceedings inadequate for purposes of due process also render the CSRT deficient as a competent tribunal.  Army Regulations 190-8 and the Administrative Procedures Act also show these procedures are unlawful as, for example, the burden of proof is not consistent with that established in the regulations.

81.    Moreover, it is now too late to establish a competent tribunal.  Article 5 of Geneva Convention III, provides that "should any doubt arise as to whether persons, having committed a belligerent act and having fallen into the hands of the enemy belong to any of the categories enumerated in [Article 4 of the Geneva Convention (III), defining the different categories of belligerents,] such persons shall enjoy the protection of the present Convention until such time as their status has been determined by a competent tribunal."[16]

---

[15]    *See id.* at Art. 5.

[16]    *Id.* at Art. 5. Geneva Convention (III) revised the Geneva Convention relative to the Treatment of Prisoner of War of July 27, 1929, which followed the 18 October 1907 Hague Conventions [Relative to the Opening of Hostilities (III), Respecting the Laws and Customs of War on Land (IV), and Respecting the Rights and Duties of Neutral Powers and Persons in Case of War on Land (V)] , and was enacted concurrent with the Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces In the Field, Geneva, 12 August 1949 ["Geneva Convention (I)"], the Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea, Geneva, 12 August 1949 ["Geneva Convention (II)"], Convention relative to the Protection of Civilian Persons in Time of War, Geneva, 12 August 1949 ["Geneva Convention (IV)"].  Subsequently, two Protocols Additional to the Geneva Conventions of 12 August 1949, relating to the Protection of Victims of International Armed Conflicts ("Protocol I"), 8 June 1977, and relating to the Protection of Victims of Non-International. Armed Conflicts

(continued...)

82.    Respondents have unlawfully detained Bahlool in violation of their obligation to treat Bahlool presumptively as a POW, as required by Article 5, and in violation of the procedural requirements of the Third and Fourth Geneva Conventions and customary international law more generally.    Thus, the government's failure to accord Petitioner Bahlool the protections of Article 5 violates the provisions of Geneva Convention (III) as well as the U.S. military regulations promulgated to implement them.[17]

---

("Protocol II"), 8 June 1977.  The United States is not a signatory to Protocol I, but Australia and many other nations are.

[17]    In addition, in *Hamdi*, Justice Souter, in his concurring and dissenting opinion (joined by Judge Ginsburg), pointed out that under Respondents' stated position, "the Geneva Convention applies to the Taliban detainees[,]" Office of the White House Press Secretary, Fact Sheet, Status of Detainees at Guantanamo (Feb. 7, 2002), www.whitehouse.gov/news/releases/2002/ 02/20020207-13.html (available in Clerk of Court's case file) (hereinafter White House Press Release) (cited in Brief for Respondents 24, n. 9)[,] Hamdi is such a detainee according to the Government's own account, because, under that account, he was taken bearing arms on the Taliban side of a field of battle in Afghanistan. He would therefore seem to qualify for treatment as a prisoner of war under the Third Geneva Convention, to which the United States is a party.  Article 4 of the Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, [1955] 6 U. S. T. 3316, 3320, T. I. A. S. No. 3364." 542 U.S. at 548, 124 S. Ct. at 2657 (Souter, J., *concurring in part and dissenting in part, and concurring in the judgment*).[17]

While ultimately noting that "[w]hether, or to what degree, the Government is in fact violating the Geneva Convention and is thus acting outside the customary usages of war are not matters I can resolve at this point[,]" 542 U.S. at 551, 124 S. Ct. at 2658-59, Justice Souter (and Justice Ginsberg) nevertheless stated that "[f]or now it is enough to recognize that the Government's stated legal position in its campaign against the Taliban (among whom Hamdi was allegedly captured) is apparently at odds with its claim here to be acting in accordance with customary law of war and hence to be within the terms of the Force Resolution in its detention of Hamdi." 542 U.S. at 548, 124 S. Ct. at 2657 (Souter, J., *concurring in part and dissenting in part, and concurring in the judgment*). Justice Souter also expressed his concern that

> [b]y holding [Mr. Hamdi] incommunicado, however, the Government obviously has not been treating him as a prisoner of war, and in fact the Government claims that no Taliban detainee is entitled to prisoner of war status.  See Brief for Respondents 24; White House Press Release.  This treatment appears to be a violation of the Geneva Convention provision that even in cases of doubt, captives are entitled to be treated as prisoners of war "until such time as their status has been determined by a competent tribunal."  Art. 5, 6 U.S. T., at 3324.

542 U.S. at 548, 124 S. Ct. at 2657 (Souter, J., *concurring in part and dissenting in part, and concurring in the judgment*). *See also id.* [noting that government's position is "apparently at odds with the [applicable] military regulation," Army Reg. 190-8, §§ 1-5, 1-6 (1997)].

83.    Respondents have deliberately contravened the requirement that Bahlool's status be determined in order to subject Bahlool to improper and illegal interrogation techniques that violate not only Geneva Convention (III), but also the United States Constitution (Fifth and Sixth Amendments), treaties to which the U.S. is a signatory, and international and common law.

## C.    The government cannot continue to hold Bahlool as an enemy combatant  because it has not shown that he is one.

84.    The government has not come forward with any proof of Bahlool's combatant status.  Under the Constitution, the Geneva Conventions, the International Covenant on Civil and Political Rights, and the American Declaration on the Rights and Duties of Man, Bahlool cannot be held arbitrarily.  Bahlool is entitled to a judicial determination of his status.  In order to hold Bahlool as an enemy combatant, the government must demonstrate that he is an enemy combatant.  If it does this, it still must accord him prisoner of war status.  And absent a showing that Bahlool is an enemy combatant, Bahlool is entitled to release.

## D.    The government cannot continue to hold Bahlool under its own regulations

85.    Indeed, even under the Army's own Regulations 190-8 at 1-6(g), "Persons who have been determined not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed."[18]

86.    By arbitrarily and capriciously detaining Petitioner in custody for over two and a half years while claiming he is not entitled to prisoner of war status, Respondents have acted and continue to act *ultra vires* and in violation of the Administrative Procedures Act, 5 U.S.C. §

---

[18]    *See* Army Regulation 190-8, Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees, §. 1-6(g), (1997).

706(2). Under the Army's own regulations, Petitioner cannot be held unless he has committed specific acts under which he can be punished. But as we have seen in the Counts on the Commission, the government has not charged Petitioner with any acts that could form a basis to hold him.

### E.  Under the Alien Tort Claims Act, Respondents Cannot Continue to Detain Petitioner Bahlool.

87.  By arbitrarily holding Petitioner without any justification for doing so and subjecting him to cruel, inhuman or degrading treatment, including torture, Respondents have acted in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350 in that the acts violated customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

### F.  The government cannot continue to hold Bahlool as an enemy combatant once hostilities have ended.

88.  Under Article 118 of Geneva Convention (III), "[p]risoners of war shall be released and repatriated without delay after the cessation of active hostilities." *See also Hamdi*, 542 U.S. at 518, 124 S. Ct. at 2640-41. Respondents and their agents have acknowledged that hostilities in Afghanistan have ceased or will soon cease (even if they were ongoing to some extent until shortly before the Supreme Court's decision in *Hamdi*). Indeed, the Chairman of the Joint Chiefs of Staff recently commented with respect to security in Afghanistan, "Security-wise, the *al Qaeda* threat is virtually nonexistent in the country."[19] Similarly, Respondent Secretary Rumsfeld, in a joint May 1, 2003 press conference with Afghan President Hamid Karzai in

---

[19]    *See* Armed Forces Information Service, *Joint Chiefs Chairman Notes Improvement In Afghanistan* (Aug. 16, 2004), *at* www.defenselink.mil/news/Aug2004/n08112004_2004081207.html.

Washington, announced that "we're at a point where we clearly have moved from major combat activity to a period of stability and stabilization and reconstruction activities. The bulk of this country today is permissive, it's secure."[20]

89.    Bahlool is presumptively a POW entitled to all protections afforded by Geneva Convention (III), including, under Article 118, release after hostilities have ceased.

90.    Bahlool also is entitled to the protection of Common Article 3 of Geneva Convention (III). Article 3(1)(d) prohibits the contracting parties from "passing. . . sentences . . . without previous judgment pronounced by a regularly constituted court, affording all the judicial guarantees which are recognized as indispensable by civilized peoples."

91.    In this case, the prolonged confinement of Bahlool without charge, and without process to contest his guilt or challenge his detention, amounts to an arbitrary and illegally imposed sentence that is incompatible with fundamental guarantees of due process recognized by all civilized people, in violation of Article 3 of the Geneva Convention (III), and in violation of the due process clause of the Fifth Amendment. Further, Respondents' confinement of Bahlool is a form of punishment in violation of the 8th Amendment to the Constitution. Accordingly, Bahlool is entitled to a writ of habeas corpus and should be released immediately.

### COUNT SEVEN

### RESPONDENTS HAVE DENIED
### BAHLOOL THE RIGHT TO A SPEEDY TRIAL AND THE RIGHT
### TO BE FREE FROM UNREASONABLE PRE-TRIAL CONFINEMENT

92.    Bahlool re-alleges and incorporates by reference paragraphs 1 though 91 above.

---

[20]    *See CNN Rumsfeld:    Major combat over in Afghanistan* (May 1, 2003) *at* http://www.cnn.com/2003/WORLD/asiapcf/central/05/01/afghan.combat; *See also* Armed Forces Information Service, *News Articles,* (May 1, 2003) *at* http://www.defenselink.mil/news/May2003/n05012003_200305016.html.

A.    **Bahlool was entitled to a speedy trial under the UCMJ.**

93.    The PMO, pursuant to which Bahlool has been detained for trial, purports to be based, in part, on congressional authorization embodied in selected provisions of the UCMJ. In promulgating the PMO, Respondent President Bush relied, in part, on his authority under 10 U.S.C. §836, which allows the Executive to prescribe rules for military commissions so long as they are not inconsistent with the UCMJ.

94.    However, the PMO, and its implementation through MCO No. 1, clearly contravene Article 10 of the UCMJ, 10 U.S.C. §810, which provides that any arrest or confinement of an accused must be terminated unless charges are instituted promptly and made known to the accused, and speedy trial afforded for a determination of guilt on such charges:

> [w]hen any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or dismiss the charges and release him.

10 U.S.C. § 810.

95.    Bahlool is a person subject to the UCMJ by virtue of Respondent President Bush's PMO and MCO No. 1, as well as by virtue of Article 2 of the UCMJ, 10 U.S.C. § 802(a)(12), which provides that "persons within an area leased by or otherwise reserved or acquired for the use of the United States" and under the control of any of the various branches of the military are subject to the UCMJ. Under the Supreme Court's decision in *Rasul*, 542 U.S. at 480, 124 S. Ct. at 2696-98, Guantanamo Bay qualifies under both prongs.

96.    The type of delays to which Bahlool has been subjected are intolerable in the absence of extraordinary or compelling circumstances. Here, the Respondents have not provided any reason whatsoever for their inordinate delays in charging Bahlool. Since Respondents did not take "immediate steps . . . to inform" Bahlool "of the specific wrong of which he is accused,"

they now have a clear and nondiscretionary duty under the UCMJ to "release him" from his confinement.

**B.    Bahlool was entitled to a speedy trial under the Geneva Convention.**

97.    Bahlool's lengthy pre-trial confinement violates Article 103 of Geneva Convention (III), as well as United States government regulations.    Article 103 of Geneva Convention (III) provides that:

> [j]udicial investigations relating to a prisoner of war shall be conducted as rapidly as circumstances permit and so that his trial shall take place as soon as possible. A prisoner of war shall not be confined while awaiting trial unless a member of the armed forces of the Detaining Power would be so confined if he were accused of a similar offence, or if it is essential to do so in the interests of national security. *In no circumstances shall this confinement exceed three months.*

6 U.S.T. 3316, 3394, 75 U.N.T.S. 135 (emphasis added).

98.    In addition, Article 5 of Geneva Convention (III) declares that:

> should any doubt arise as to whether persons . . . belong to any of the categories [entitled to protection as a P.O.W. under the Convention], such persons shall enjoy the protection of the present Convention until such time as their status has been determined by a competent tribunal.

99.    Likewise, §1-6(a) U.S Army Regulation 190-8, entitled Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees, requires that United States military forces abide by the provisions of Article 5 of Geneva Convention (III).    Similarly, the Commander's Handbook on the Law of Naval Operations states that "individuals captured as spies or as illegal combatants have the right to assert their claim of entitlement to prisoner-of-war status before a judicial tribunal and to have the question adjudicated."  Department of the Navy, NWP 1-14M, The Commander's Handbook on the Law of Naval Operations 11.7 (1995).

100.    Respondents are under a clear nondiscretionary duty under Geneva Convention (III), and under the U.S. Army's (and Navy's) own regulations to release Bahlool

because he has been detained in segregation for more than three months – indeed, for many, many more months than the permissible period.

101.    Even if Bahlool were not a presumptive POW, the Geneva Convention would not sanction such delay.  The Geneva Convention requires that all civilians and protected persons must be "promptly informed" of the charges and brought to trial "as rapidly as possible."  Geneva Convention IV, art. 7.  Similarly the fundamental guarantees of Protocol I require that Bahlool be "informed without delay" of the particulars of charges, and incorporate the International Covenant on Civil and Political Rights.

### C.    Bahlool was entitled to a speedy trial under the Sixth Amendment.

102.    Moreover, the Sixth Amendment to the United States Constitution requires that in all criminal prosecutions, "the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  Respondents' unlawful detention violates Bahlool's right to a speedy trial.

103.    Respondents have denied Bahlool his right to a speedy trial as required by American law, the Constitution, and international law and treaty, and Bahlool therefore is entitled to a writ of habeas corpus and immediate release.

### COUNT EIGHT

### THE ABUSE, MISTREATMENT, AND
### RELATED INTERROGATION OF BAHLOOL CONSTITUTES SHOCKING
### AND OFFENSIVE GOVERNMENT CONDUCT DENYING HIM DUE PROCESS

104.    Bahlool re-alleges and incorporates by reference paragraphs 1 through 103 above.

105.    The charge asserted against Bahlool cannot properly justify his detention because it is based on unlawfully obtained statements from Bahlool and other detainees (at Guantanamo Bay and elsewhere).  *See* Composite Statement (attached hereto as Exhibit 2).  Those statements have been procured via coercive and "aggressive" interrogation techniques and environment that

not only violate Bahlool's Fifth Amendment right to remain silent, his Sixth Amendment right to

counsel (with respect to his own statements), and his Eighth Amendment right to be free from

cruel and unusual punishment, but also "shock the conscience" and thereby violate Bahlool's

Fifth Amendment Due Process rights (with respect to his own statements as well as those of

other detainees). Those techniques also violate Bahlool's rights under Geneva Convention (III),

the CAT, the UCMJ, the ATCA (which prohibits both torture and cruel, inhuman and degrading

treatment), Army Regulation 190-8 and the APA, and customary international law. The

illegitimacy of basing Bahlool's prosecution by the Commission upon statements obtained

through coercive interrogation arises not only from the volume and degree of abuse, but also

from the fact that statements obtained via coercion and a naked reward/punishment system are

simply not reliable[21] — and certainly not sufficiently so to find Bahlool guilty beyond a

reasonable doubt, and imprison him as a result. Article 99 of the Geneva Convention (III)

specifically provides that "[n]o moral or physical coercion may be exerted on a prisoner of war

in order to induce him to admit himself guilty of the act of which he is accused."[22] A process

---

[21]     Dissenting in *Padilla*, Justice Stevens cautioned:

> [Executive detention] may not, however, be justified by the naked interest in using
> unlawful procedures to extract information. Incommunicado detention for months on end is such
> a procedure. Whether the information so procured is more or less reliable than that acquired by
> more extreme forms of torture is of no consequence. For if this Nation is to remain true to the
> ideals symbolized by its flag, it must not wield the tools of tyrants even to resist an assault by the
> forces of tyranny.

542 U.S. at 465, 124 S. Ct. at 2735 (Stevens, J., *dissenting*).

[22]     The National Commission on Terrorist Attacks Upon the United States, 108th Cong., The 9/11
Commission Report 380 (Gov't. Printing Office 2004), *at* http://www.9-11 commission.gov/report/911/Report.pdf
(hereinafter "the 9/11 Commission"), in its Final Report published last month, recognized the importance of Geneva
Convention (III) and international law in the treatment of detainees. In fact, the 9/11 Commission included among
its recommendations that:

> [t]he United States should engage its friends to develop a common coalition approach
> toward the detention and humane treatment of captured terrorists. New principles might draw
> upon Article 3 of the Geneva Conventions on the law of armed conflict. That article was

(continued...)

that permits such unlawful extraction and use of improperly obtained statements to form the basis of charges or at trial cannot stand. *See, e.g., United States v. Russell*, 411 U.S. 423, 431-32 (1973) (acknowledging that there could exist "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction"), *citing [cf.] Rochin v. California*, 342 U.S. 165 (152). As a result, Bahlool also is entitled to habeas relief on that basis.

106.    Since the abuse, mistreatment and related interrogations of Bahlool constitutes such shocking and offensive government conduct, Bahlool has been denied his right to due process. Consequently, the only remedy capable of vindicating Bahlool's rights is the grant of a writ of habeas corpus, dismissal of the Commission charges against Bahlool, and an order requiring Bahlool's release.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant him the following relief:

Issue the writ of mandamus or issue an Order directing Respondents to show cause why a writ of habeas corpus should not be granted and why Bahlool should not be immediately released;

1.    If an Order to Show Cause is issued, to include as part of the Order a prompt schedule to receive briefing from the parties, including a Response from Respondents, and a Reply from Petitioner, on the issues raised in this Petition, followed by a hearing before this Court on any contested factual or legal issues, and production of Petitioner Bahlool as appropriate;

2.    Issue an Order declaring unconstitutional and invalid and enjoining any and all Commission proceedings and/or findings against Petitioner Bahlool;

3.    Enter an Order declaring the Combatant Status Review Tribunal unconstitutional and invalid, and enjoin its operation with respect to Petitioner Bahlool; and

4.    Issue a writ of mandamus and an Order that orders Respondents not to use the

---

specifically designed for those cases in which the usual laws of war did not apply. Its minimum standards are generally accepted throughout the world as customary international law.

*Id.*

PMO and/or the Military Commission Orders and Instructions to detain Bahlool, or adjudicate charges against Petitioner Bahlool, or conduct any proceedings related to such charges, because those Orders and instructions violate the U.S. Constitution, U.S. law, and U.S. treaty obligations, both facially and as applied to Petitioner Bahlool and are therefore *ultra vires* and illegal;

5.    After notice and hearing, determine and declare  that Petitioner Bahlool's detention violates the Constitution, laws, treaties, and regulations of the United States; that the PMO is unconstitutional; that Bahlool has been denied a speedy trial; and that Respondents lack any jurisdiction over Petitioner Bahlool;

6.    After notice and hearing, issue a writ of mandamus that directs Respondents to obey their clear, nondiscretionary duty to follow the Constitution, laws, regulations, and treaties of the United States, and therefore to release Petitioner Bahlool immediately;

7.    Grant a writ of habeas corpus on behalf of Petitioner Bahlool ordering his immediate release;

8.    Enter an Order that the Court shall retain jurisdiction over this matter to permit Petitioner Bahlool to respond to arguments advanced by Respondents on matters related to his continued detention;

9.    Grant such other and further relief on behalf of Petitioner Bahlool and against Respondents as this Court deems just and proper.

Respectfully submitted,

Counsel for Petitioners/Plaintiffs:

_____

Wesley R. Powell (WP7857)
Patrick Train-Gutiérrez
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 100166
(212) 309-1000
(212) 309-1100 (facsimile)

Thomas R. Snider
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500
(202) 778-2201 (facsimile)

*Of Counsel*
Barbara J. Olshansky
Director Counsel
Tina Monshipour Foster
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

December 13, 2005

35

## CERTIFICATE OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner Bahlool, pursuant to L.Cv. R. 83.2(g), certify that they are

representing Petitioner without compensation.

Respectfully submitted,

Wesley R. Powell (WP7857)
Patrick Train-Gutiérrez
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 100166
(212) 309-1000
(212) 309-1100 (facsimile)

Thomas R. Snider
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500
(202) 778-2201 (facsimile)

December 13, 2005

36

## DECLARATION OF SERVICE

Michelle Kass hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am a paralegal at Hunton & Williams LLP, attorneys for Petitioners Issam Hamid Ali Bin Ali Al Jayfi and Ali Hamza Ahmed Suliman Al Bahlool.

That on December 14, 2005, I served a true copy of the Supplemental Petition of Ali Hamza Ahmad Suliman Bahlool for Writ of Habeas Corpus and Complaint for Injunctive Declaratory and Other Relief on all parties via the Court's ECF System, and on all parties who did not receive these court filings via the Court's ECF system, by depositing same in a duly enclosed and sealed wrapper, with the correct postage thereon, in an official letter box duly maintained by the Government of the United States of America within the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 14, 2005.

_Michelle Kass_
Michelle Kass