# EXHIBIT 9

# TO

# SUPPLEMENTAL PETITION OF BAHLOOL



# Department of Defense
# Military Commission Instruction No. 2

April 30, 2003

SUBJECT:   Crimes and Elements for Trials by Military Commission

References:   (a)  Military Commission Order No. 1 (Mar. 21, 2002)

(b)  Military Order of November 13, 2001, "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 F.R. 57833 (Nov. 16, 2001)

(c)  Section 113(d) of Title 10 of the United States Code

(d)  Section 140(b) of Title 10 of the United States Code

(e)  Section 821 of Title 10 of the United States Code

(f)  Military Commission Instruction No. 1, current edition

## 1. PURPOSE

This Instruction provides guidance with respect to crimes that may be tried by military commissions established pursuant to references (a) and (b) and enumerates the elements of those crimes.

## 2. AUTHORITY

This Instruction is issued pursuant to Section 7(A) of reference (a) and in accordance with references (b) through (e). The provisions of reference (f) are applicable to this Instruction.

## 3. GENERAL

A. *Background.* The following crimes and elements thereof are intended for use by military commissions established pursuant to references (a) and (b), the jurisdiction of which extends to offenses or offenders that by statute or the law of armed conflict may be tried by military commission as limited by reference (b). No offense is cognizable in a trial by military commission if that offense did not exist prior to the conduct in question. These crimes and elements derive from the law of armed conflict, a body of law that is sometimes referred to as the law of war. They constitute violations of the law of armed conflict or offenses that, consistent with that

body of law, are triable by military commission. Because this document is declarative of existing law, it does not preclude trial for crimes that occurred prior to its effective date.

B. *Effect of Other Laws.* No conclusion regarding the applicability or persuasive authority of other bodies of law should be drawn solely from the presence, absence, or similarity of particular language in this Instruction as compared to other articulations of law.

C. *Non-Exclusivity.* This Instruction does not contain a comprehensive list of crimes triable by military commission. It is intended to be illustrative of applicable principles of the common law of war but not to provide an exclusive enumeration of the punishable acts recognized as such by that law. The absence of a particular offense from the corpus of those enumerated herein does not preclude trial for that offense.

## 4. APPLICABLE PRINCIPLES OF LAW

A. *General Intent.* All actions taken by the Accused that are necessary for completion of a crime must be performed with general intent. This intent is not listed as a separate element. When the mens rea required for culpability to attach involves an intent that a particular consequence occur, or some other specific intent, an intent element is included. The necessary relationship between such intent element and the conduct constituting the actus reus is not articulated for each set of elements, but is presumed; a nexus between the two is necessary.

B. *The Element of Wrongfulness and Defenses.* Conduct must be wrongful to constitute one of the offenses enumerated herein or any other offense triable by military commission. Conduct is wrongful if it is done without justification or excuse cognizable under applicable law. The element of wrongfulness (or the absence of lawful justification or excuse), which may be required under the customary law of armed conflict, is not repeated in the elements of crimes below. Conduct satisfying the elements found herein shall be inferred to be wrongful in the absence of evidence to the contrary. Similarly, this Instruction does not enunciate defenses that may apply for specific offenses, though an Accused is entitled to raise any defense available under the law of armed conflict. Defenses potentially available to an Accused under the law of armed conflict, such as self-defense, mistake of fact, and duress, may be applicable to certain offenses subject to trial by military commission. In the absence of evidence to the contrary, defenses in individual cases shall be presumed not to apply. The burden of going forward with evidence of lawful justification or excuse or any applicable defense shall be upon the Accused. With respect to the issue of combatant immunity raised by the specific enumeration of an element requiring the absence thereof, the prosecution must affirmatively prove that element regardless of whether the issue is raised by the defense. Once an applicable defense or an issue of lawful justification or lawful excuse is fairly raised by the evidence presented, except for the defense of lack of mental responsibility, the burden is on the prosecution to establish beyond a reasonable doubt that the conduct was wrongful or that the defense does not apply. With respect to the defense of lack of mental responsibility, the

2

Accused has the burden of proving by clear and convincing evidence that, as a result of a severe mental disease or defect, the Accused was unable to appreciate the nature and quality of the wrongfulness of the Accused's acts. As provided in Section 5(C) of reference (a), the prosecution bears the burden of establishing the Accused's guilt beyond a reasonable doubt in all cases tried by a military commission. Each element of an offense enumerated herein must be proven beyond a reasonable doubt.

C. *Statute of Limitations.* Violations of the laws of war listed herein are not subject to any statute of limitations.

## 5. DEFINITIONS

A. *Combatant immunity.* Under the law of armed conflict, only a lawful combatant enjoys "combatant immunity" or "belligerent privilege" for the lawful conduct of hostilities during armed conflict.

B. *Enemy.* "Enemy" includes any entity with which the United States or allied forces may be engaged in armed conflict, or which is preparing to attack the United States. It is not limited to foreign nations, or foreign military organizations or members thereof. "Enemy" specifically includes any organization of terrorists with international reach.

C. *In the context of and was associated with armed conflict.* Elements containing this language require a nexus between the conduct and armed hostilities. Such nexus could involve, but is not limited to, time, location, or purpose of the conduct in relation to the armed hostilities. The existence of such factors, however, may not satisfy the necessary nexus (*e.g.*, murder committed between members of the same armed force for reasons of personal gain unrelated to the conflict, even if temporally and geographically associated with armed conflict, is not "in the context of" the armed conflict). The focus of this element is not the nature or characterization of the conflict, but the nexus to it. This element does not require a declaration of war, ongoing mutual hostilities, or confrontation involving a regular national armed force. A single hostile act or attempted act may provide sufficient basis for the nexus so long as its magnitude or severity rises to the level of an "armed attack" or an "act of war," or the number, power, stated intent or organization of the force with which the actor is associated is such that the act or attempted act is tantamount to an attack by an armed force. Similarly, conduct undertaken or organized with knowledge or intent that it initiate or contribute to such hostile act or hostilities would satisfy the nexus requirement.

D. *Military Objective.* "Military objectives" are those potential targets during an armed conflict which, by their nature, location, purpose, or use, effectively contribute to the opposing force's war-fighting or war-sustaining capability and whose total or partial destruction, capture, or neutralization would constitute a military advantage to the attacker under the circumstances at the time of the attack.

E. *Object of the attack.* "Object of the attack" refers to the person, place, or thing intentionally targeted. In this regard, the term includes neither collateral damage nor incidental injury or death.

3

F. *Protected property.* "Protected property" refers to property specifically protected by the law of armed conflict such as buildings dedicated to religion, education, art, science or charitable purposes, historic monuments, hospitals, or places where the sick and wounded are collected, provided they are not being used for military purposes or are not otherwise military objectives. Such property would include objects properly identified by one of the distinctive emblems of the Geneva Conventions but does not include all civilian property.

G. *Protected under the law of war.* The person or object in question is expressly "protected" under one or more of the Geneva Conventions of 1949 or, to the extent applicable, customary international law. The term does not refer to all who enjoy some form of protection as a consequence of compliance with international law, but those who are expressly designated as such by the applicable law of armed conflict. For example, persons who either are *hors de combat* or medical or religious personnel taking no active part in hostilities are expressly protected, but other civilians may not be.

H. *Should have known.* The facts and circumstances were such that a reasonable person in the Accused's position would have had the relevant knowledge or awareness.

## 6. CRIMES AND ELEMENTS

A. *Substantive Offenses—War Crimes.* The following enumerated offenses, if applicable, should be charged in separate counts. Elements are drafted to reflect conduct of the perpetrator. Each element need not be specifically charged.

1) **Willful Killing Of Protected Persons**

   a. *Elements.*

      (1) The accused killed one or more persons;

      (2) The accused intended to kill such person or persons;

      (3) Such person or persons were protected under the law of war;

      (4) The accused knew or should have known of the factual circumstances that established that protected status; and

      (5) The killing took place in the context of and was associated with armed conflict.

   b. *Comments.*

      (1) The intent required for this offense precludes its applicability with regard to collateral damage or injury incident to a lawful attack.

4

## 2) Attacking Civilians

a. *Elements.*

(1) The accused engaged in an attack;

(2) The object of the attack was a civilian population as such or individual civilians not taking direct or active part in hostilities;

(3) The accused intended the civilian population as such or individual civilians not taking direct or active part in hostilities to be an object of the attack; and

(4) The attack took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) The intent required for this offense precludes its applicability with regard to collateral damage or injury incident to a lawful attack.

## 3) Attacking Civilian Objects

a. *Elements.*

(1) The accused engaged in an attack;

(2) The object of the attack was civilian property, that is, property that was not a military objective;

(3) The accused intended such property to be an object of the attack;

(4) The accused knew or should have known that such property was not a military objective; and

(5) The attack took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) The intent required for this offense precludes its applicability with regard to collateral damage or injury incident to a lawful attack.

## 4) Attacking Protected Property

a. *Elements.*

(1) The accused engaged in an attack;

(2) The object of the attack was protected property;

(3) The accused intended such property to be an object of the attack;

(4) The accused knew or should have known of the factual circumstances that established that protected status; and

5

(5) The attack took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) The intent required for this offense precludes its applicability with regard to collateral damage or injury incident to a lawful attack.

## 5) Pillaging

a. *Elements.*

(1) The accused appropriated or seized certain property;

(2) The accused intended to appropriate or seize such property for private or personal use;

(3) The appropriation or seizure was without the consent of the owner of the property or other person with authority to permit such appropriation or seizure; and

(4) The appropriation or seizure took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) As indicated by the use of the term "private or personal use," legitimate captures or appropriations, or seizures justified by military necessity, cannot constitute the crime of pillaging.

## 6) Denying Quarter

a. *Elements.*

(1) The accused declared, ordered, or otherwise indicated that there shall be no survivors or surrender accepted;

(2) The accused thereby intended to threaten an adversary or to conduct hostilities such that there would be no survivors or surrender accepted;

(3) It was foreseeable that circumstances would be such that a practicable and reasonable ability to accept surrender would exist;

(4) The accused was in a position of effective command or control over the subordinate forces to which the declaration or order was directed; and

(5) The conduct took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) Element (3) precludes this offense from being interpreted as limiting the application of lawful means or methods of warfare against enemy

combatants.  For example, a remotely delivered attack cannot give rise to
this offense.

**7) Taking Hostages**

    a.  *Elements.*

        (1) The accused seized, detained, or otherwise held hostage one or more
persons;

        (2) The accused threatened to kill, injure, or continue to detain such person or
persons;

        (3) The accused intended to compel a State, an international organization, a
natural or legal person, or a group of persons to act or refrain from acting
as an explicit or implicit condition for the safety or release of such person
or persons; and

        (4) The conduct took place in the context of and was associated with armed
conflict.

    b.  *Comments.*

        (1) Consistent with Section 4(B) of this Instruction, this offense cannot be
committed by lawfully detaining enemy combatants or other individuals as
authorized by the law of armed conflict.

**8) Employing Poison or Analogous Weapons**

    a.  *Elements.*

        (1) The accused employed a substance or a weapon that releases a substance
as a result of its employment;

        (2) The substance was such that exposure thereto causes death or serious
damage to health in the ordinary course of events, through its
asphyxiating, poisonous, or bacteriological properties;

        (3) The accused employed the substance or weapon with the intent of utilizing
such asphyxiating, poisonous, or bacteriological properties as a method of
warfare;

        (4) The accused knew or should have known of the nature of the substance or
weapon; and

        (5) The conduct took place in the context of and was associated with armed
conflict.

    b.  *Comments.*

        (1) The "death or serious damage to health" required by Element (2) of this
offense must be a direct result of the substance's effect or effects on the
human body (e.g., asphyxiation caused by the depletion of atmospheric

7

oxygen secondary to a chemical or other reaction would not give rise to this offense).

(2) The clause "serious damage to health" does not include temporary incapacitation or sensory irritation.

(3) The use of the "substance or weapon" at issue must be proscribed under the law of armed conflict. It may include chemical or biological agents.

(4) The specific intent element for this offense precludes liability for mere knowledge of potential collateral consequences (e.g., mere knowledge of a secondary asphyxiating or toxic effect would be insufficient to complete the offense).

9) **Using Protected Persons as Shields**

   a. *Elements.*

   (1) The accused positioned, or took advantage of the location of, one or more civilians or persons protected under the law of war;

   (2) The accused intended to use the civilian or protected nature of the person or persons to shield a military objective from attack or to shield, favor, or impede military operations; and

   (3) The conduct took place in the context of and was associated with armed conflict.

10) **Using Protected Property as Shields**

    a. *Elements.*

    (1) The accused positioned, or took advantage of the location of, civilian property or property protected under the law of war;

    (2) The accused intended to shield a military objective from attack or to shield, favor, or impede military operations; and

    (3) The conduct took place in the context of and was associated with armed conflict.

11) **Torture**

    a. *Elements.*

    (1) The accused inflicted severe physical or mental pain or suffering upon one or more persons;

    (2) The accused intended to inflict such severe physical or mental pain or suffering;

8

(3) Such person or persons were in the custody or under the control of the accused; and

(4) The conduct took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) Consistent with Section 4(B) of this Instruction, this offense does not include pain or suffering arising only from, inherent in, or incidental to, lawfully imposed punishments. This offense does not include the incidental infliction of pain or suffering associated with the legitimate conduct of hostilities.

(2) Severe "mental pain or suffering" is the prolonged mental harm caused by or resulting from:

(a) the intentional infliction or threatened infliction of severe physical pain or suffering;

(b) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(c) the threat of imminent death; or

(d) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality.

(3) "Prolonged mental harm" is a harm of some sustained duration, though not necessarily permanent in nature, such as a clinically identifiable mental disorder.

(4) Element (3) of this offense does not require a particular formal relationship between the accused and the victim. Rather, it precludes prosecution for pain or suffering consequent to a lawful military attack.

## 12) Causing Serious Injury

a. *Elements.*

(1) The accused caused serious injury to the body or health of one or more persons;

(2) The accused intended to inflict such serious injury;

(3) Such person or persons were in the custody or under the control of the accused; and

(4) The conduct took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) "Serious injury" includes fractured or dislocated bones, deep cuts, torn members of the body, and serious damage to internal organs.

### 13) Mutilation or Maiming

a. *Elements.*

(1) The accused subjected one or more persons to mutilation, in particular by permanently disfiguring the person or persons, or by permanently disabling or removing an organ or appendage;

(2) The accused intended to subject such person or persons to such mutilation;

(3) The conduct caused death or seriously damaged or endangered the physical or mental health or appearance of such person or persons.

(4) The conduct was neither justified by the medical treatment of the person or persons concerned nor carried out in the interest of such person or persons;

(5) Such person or persons were in the custody or control of the accused; and

(6) The conduct took place in the context of and was associated with armed conflict.

### 14) Use of Treachery or Perfidy

a. *Elements.*

(1) The accused invited the confidence or belief of one or more persons that they were entitled to, or were obliged to accord, protection under the law of war;

(2) The accused intended to betray that confidence or belief;

(3) The accused killed, injured, or captured one or more persons;

(4) The accused made use of that confidence or belief in killing, injuring, or capturing such person or persons; and

(5) The conduct took place in the context of and was associated with armed conflict.

**15) Improper Use of Flag of Truce**

   a. *Elements.*

     (1) The accused used a flag of truce;

     (2) The accused made such use in order to feign an intention to negotiate, surrender, or otherwise to suspend hostilities when there was no such intention on the part of the accused; and

     (3) The conduct took place in the context of and was associated with armed conflict.

**16) Improper Use of Protective Emblems**

   a. *Elements.*

     (1) The accused used a protective emblem recognized by the law of armed conflict;

     (2) The accused undertook such use for combatant purposes in a manner prohibited by the law of armed conflict;

     (3) The accused knew or should have known of the prohibited nature of such use; and

     (4) The conduct took place in the context of and was associated with armed conflict.

   b. *Comments.*

     (1) "Combatant purposes," as used in Element (2) of this offense, means purposes directly related to hostilities and does not include medical, religious, or similar activities.

**17) Degrading Treatment of a Dead Body**

   a. *Elements.*

     (1) The accused degraded or otherwise violated the dignity of the body of a dead person;

     (2) The accused intended to degrade or otherwise violate the dignity of such body;

     (3) The severity of the degradation or other violation was of such degree as to be generally recognized as an outrage upon personal dignity; and

     (4) The conduct took place in the context of and was associated with armed conflict.

    b. *Comments.*

      (1) Element (2) of this offense precludes prosecution for actions justified by military necessity.

## 18) Rape

    a. *Elements.*

      (1) The accused invaded the body of a person by conduct resulting in penetration, however slight, of any part of the body of the victim or of the accused with a sexual organ, or of the anal or genital opening of the victim with any object or any other part of the body;

      (2) The invasion was committed by force, threat of force or coercion, or was committed against a person incapable of giving consent; and

      (3) The conduct took place in the context of and was associated with armed conflict.

    b. *Comments.*

      (1) Element (2) of this offense recognizes that consensual conduct does not give rise to this offense.

      (2) It is understood that a person may be incapable of giving consent if affected by natural, induced, or age-related incapacity.

      (3) The concept of "invasion" is linked to the inherent wrongfulness requirement for all offenses. In this case, for example, a legitimate body cavity search could not give rise to this offense.

      (4) The concept of "invasion" is gender neutral.

B. *Substantive Offenses—Other Offenses Triable by Military Commission.* The following enumerated offenses, if applicable, should be charged in separate counts. Elements are drafted to reflect conduct of the perpetrator. Each element need not be specifically charged.

## 1) Hijacking or Hazarding a Vessel or Aircraft

    a. *Elements.*

      (1) The accused seized, exercised control over, or endangered the safe navigation of a vessel or aircraft;

      (2) The accused intended to so seize, exercise control over, or endanger such vessel or aircraft; and

      (3) The conduct took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) A seizure, exercise of control, or endangerment required by military necessity, or against a lawful military objective undertaken by military forces of a State in the exercise of their official duties, would not satisfy the wrongfulness requirement for this crime.

**2) Terrorism**

a. *Elements.*

(1) The accused killed or inflicted bodily harm on one or more persons or destroyed property;

(2) The accused:

(a) intended to kill or inflict bodily harm on one or more persons;

or

(b) intentionally engaged in an act that is inherently dangerous to another and evinces a wanton disregard of human life;

(3) The killing, harm or destruction was intended to intimidate or coerce a civilian population, or to influence the policy of a government by intimidation or coercion; and

(4) The killing, harm or destruction took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) Element (1) of this offense includes the concept of causing death or bodily harm, even if indirectly.

(2) The requirement that the conduct be wrongful for this crime necessitates that the conduct establishing this offense not constitute an attack against a lawful military objective undertaken by military forces of a State in the exercise of their official duties.

**3) Murder by an Unprivileged Belligerent**

a. *Elements.*

(1) The accused killed one or more persons;

(2) The accused:

(a) intended to kill or inflict great bodily harm on such person or persons

or

(b) intentionally engaged in an act that is inherently dangerous to another and evinces a wanton disregard of human life;

13

(3) The accused did not enjoy combatant immunity; and

(4) The killing took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) The term "kill" includes intentionally causing death, whether directly or indirectly.

(2) Unlike the crimes of willful killing or attacking civilians, in which the victim's status is a prerequisite to criminality, for this offense the victim's status is immaterial. Even an attack on a soldier would be a crime if the attacker did not enjoy "belligerent privilege" or "combatant immunity."

### 4) Destruction of Property by an Unprivileged Belligerent

a. *Elements.*

(1) The accused destroyed property;

(2) The property belonged to another person, and the destruction was without that person's consent;

(3) The accused intended to destroy such property;

(4) The accused did not enjoy combatant immunity; and

(5) The destruction took place in the context of and was associated with armed conflict.

### 5) Aiding the Enemy

a. *Elements.*

(1) The accused aided the enemy;

(2) The accused intended to aid the enemy; and

(3) The conduct took place in the context of and was associated with armed conflict.

b. *Comments.*

(1) Means of accomplishing Element (1) of this offense include, but are not limited to: providing arms, ammunition, supplies, money, other items or services to the enemy; harboring or protecting the enemy; or giving intelligence or other information to the enemy.

(2) The requirement that conduct be wrongful for this crime necessitates that the accused act without proper authority. For example, furnishing enemy combatants detained during hostilities with subsistence or quarters in accordance with applicable orders or policy is not aiding the enemy.

(3) The requirement that conduct be wrongful for this crime may necessitate that, in the case of a lawful belligerent, the accused owe allegiance or some duty to the United States of America or to an ally or coalition partner.  For example, citizenship, resident alien status, or a contractual relationship in or with the United States or an ally or coalition partner is sufficient to satisfy this requirement so long as the relationship existed at a time relevant to the offense alleged.

6) **Spying**

   a. *Elements.*

      (1) The accused collected or attempted to collect certain information;

      (2) The accused intended to convey such information to the enemy;

      (3) The accused, in collecting or attempting to collect the information, was lurking or acting clandestinely, while acting under false pretenses; and

      (4) The conduct took place in the context of and was associated with armed conflict.

   b. *Comments.*

      (1) Members of a military organization not wearing a disguise and others who carry out their missions openly are not spies, if, though they may have resorted to concealment, they have not acted under false pretenses.

      (2) Related to the requirement that conduct be wrongful or without justification or excuse in this case is the fact that, consistent with the law of war, a lawful combatant who, after rejoining the armed force to which that combatant belongs, is subsequently captured, can not be punished for previous acts of espionage.  His successful rejoining of his armed force constitutes a defense.

7) **Perjury or False Testimony**

   a. *Elements.*

      (1) The accused testified at a military commission, in proceedings ancillary to a military commission, or provided information in a writing executed under an oath to tell the truth or a declaration acknowledging the applicability of penalties of perjury in connection with such proceedings;

      (2) Such testimony or information was material;

      (3) Such testimony or information was false; and

      (4) The accused knew such testimony or information to be false.

**8) Obstruction of Justice Related to Military Commissions**

    a. *Elements.*

        (1) The accused did an act;

        (2) The accused intended to influence, impede, or otherwise obstruct the due administration of justice; and

        (3) The accused did such act in the case of a certain person against whom the accused had reason to believe:

            (a) there were or would be proceedings before a military commission

                or

            (b) there was an ongoing investigation of offenses triable by military commission.

C. *Other Forms of Liability and Related Offenses.* A person is criminally liable as a principal for a completed substantive offense if that person commits the offense (perpetrator), aids or abets the commission of the offense, solicits commission of the offense, or is otherwise responsible due to command responsibility. Such a person would be charged as a principal even if another individual more directly perpetrated the offense. In proving culpability, however, the below listed definitions and elements are applicable. Additionally, if a substantive offense was completed, a person may be criminally liable for the separate offense of accessory after the fact. If the substantive offense was not completed, a person may be criminally liable of the lesser-included offense of attempt or the separate offense of solicitation. Finally, regardless of whether the substantive offense was completed, a person may be criminally liable of the separate offense of conspiracy in addition to the substantive offense. Each element need not be specifically charged.

    1) **Aiding or Abetting**

        a. *Elements.*

            (1) The accused committed an act that aided or abetted another person or entity in the commission of a substantive offense triable by military commission;

            (2) Such other person or entity committed or attempted to commit the substantive offense; and

            (3) The accused intended to or knew that the act would aid or abet such other person or entity in the commission of the substantive offense or an associated criminal purpose or enterprise.

        b. *Comments.*

            (1) The term "aided or abetted" in Element (1) includes: assisting, encouraging, advising, instigating, counseling, ordering, or procuring

another to commit a substantive offense; assisting, encouraging, advising, counseling, or ordering another in the commission of a substantive offense; and in any other way facilitating the commission of a substantive offense.

(2) In some circumstances, inaction may render one liable as an aider or abettor. If a person has a legal duty to prevent or thwart the commission of a substantive offense, but does not do so, that person may be considered to have aided or abetted the commission of the offense if such noninterference is intended to and does operate as an aid or encouragement to the actual perpetrator.

(3) An accused charged with aiding or abetting should be charged with the related substantive offense as a principal.

2) **Solicitation**

a. *Elements.*

(1) The accused solicited, ordered, induced, or advised a certain person or persons to commit one or more substantive offenses triable by military commission; and

(2) The accused intended that the offense actually be committed.

b. *Comments.*

(1) The offense is complete when a solicitation is made or advice is given with the specific wrongful intent to induce a person or persons to commit any offense triable by military commission. It is not necessary that the person or persons solicited, ordered, induced, advised, or assisted agree to or act upon the solicitation or advice. If the offense solicited is actually committed, however, the accused is liable under the law of armed conflict for the substantive offense. An accused should not be convicted of both solicitation and the substantive offense solicited if criminal liability for the substantive offense is based upon the solicitation.

(2) Solicitation may be by means other than speech or writing. Any act or conduct that reasonably may be construed as a serious request, order, inducement, advice, or offer of assistance to commit any offense triable by military commission may constitute solicitation. It is not necessary that the accused act alone in the solicitation, order, inducement, advising, or assistance. The accused may act through other persons in committing this offense

(3) An accused charged with solicitation of a completed substantive offense should be charged for the substantive offense as a principal. An accused charged with solicitation of an uncompleted offense should be charged for the separate offense of solicitation. Solicitation is not a lesser-included offense of the related substantive offense.

17

## 3) Command/Superior Responsibility – Perpetrating

a. *Elements*.

    (1) The accused had command and control, or effective authority and control, over one or more subordinates;

    (2) One or more of the accused's subordinates committed, attempted to commit, conspired to commit, solicited to commit, or aided or abetted the commission of one or more substantive offenses triable by military commission;

    (3) The accused either knew or should have known that the subordinate or subordinates were committing, attempting to commit, conspiring to commit, soliciting, or aiding or abetting such offense or offenses; and

    (4) The accused failed to take all necessary and reasonable measures within his power to prevent or repress the commission of the offense or offenses.

b. *Comments*.

    (1) The phrase "effective authority and control" in Element (1) of this offense includes the concept of relative authority over the subject matter or activities associated with the perpetrator's conduct. This may be relevant to a civilian superior who should not be held responsible for the behavior of subordinates involved in activities that have no relationship to such superior's sphere of authority. Subject matter authority need not be demonstrated for command responsibility as it applies to a military commander.

    (2) A commander or other military or civilian superior, not in command, charged with failing adequately to prevent or repress a substantive offense triable by military commission should be charged for the related substantive offense as a principal.

## 4) Command/Superior Responsibility – Misprision

a. *Elements*.

    (1) The accused had command and control, or effective authority and control, over one or more subordinates;

    (2) One or more of the accused's subordinates had committed, attempted to commit, conspired to commit, solicited to commit, or aided or abetted the commission of one or more substantive offenses triable by military commission;

    (3) The accused knew or should have known that the subordinate or subordinates had committed, attempted to commit, conspired to commit, solicited, or aided or abetted such offense or offenses; and

    (4) The accused failed to submit the matter to competent authorities for investigation or prosecution as appropriate.

18

    b. *Comments.*

        (1) The phrase, "effective authority and control" in Element (1) of this offense includes the concept of relative authority over the subject matter or activities associated with the perpetrator's conduct. This may be relevant to a civilian superior who cannot be held responsible under this offense for the behavior of subordinates involved in activities that have nothing to do with such superior's sphere of authority.

        (2) A commander or superior charged with failing to take appropriate punitive or investigative action subsequent to the perpetration of a substantive offense triable by military commission should not be charged for the substantive offense as a principal. Such commander or superior should be charged for the separate offense of failing to submit the matter for investigation and/or prosecution as detailed in these elements. This offense is not a lesser-included offense of the related substantive offense.

## 5) Accessory After the Fact

    a. *Elements.*

        (1) The accused received, comforted, or assisted a certain person;

        (2) Such person had committed an offense triable by military commission;

        (3) The accused knew that such person had committed such offense or believed such person had committed a similar or closely related offense; and

        (4) The accused intended to hinder or prevent the apprehension, trial, or punishment of such person.

    b. *Comments.*

        (1) Accessory after the fact should be charged separately from the related substantive offense. It is not a lesser-included offense of the related substantive offense.

## 6) Conspiracy

    a. *Elements.*

        (1) The accused entered into an agreement with one or more persons to commit one or more substantive offenses triable by military commission or otherwise joined an enterprise of persons who shared a common criminal purpose that involved, at least in part, the commission or intended commission of one or more substantive offenses triable by military commission;

19

(2) The accused knew the unlawful purpose of the agreement or the common criminal purpose of the enterprise and joined in it willfully, that is, with the intent to further the unlawful purpose; and

(3) One of the conspirators or enterprise members, during the existence of the agreement or enterprise, knowingly committed an overt act in order to accomplish some objective or purpose of the agreement or enterprise.

b. *Comments.*

(1) Two or more persons are required in order to have a conspiracy. Knowledge of the identity of co-conspirators and their particular connection with the agreement or enterprise need not be established. A person may be guilty of conspiracy although incapable of committing the intended offense. The joining of another conspirator after the conspiracy has been established does not create a new conspiracy or affect the status of the other conspirators. The agreement or common criminal purpose in a conspiracy need not be in any particular form or manifested in any formal words.

(2) The agreement or enterprise must, at least in part, involve the commission or intended commission of one or more substantive offenses triable by military commission. A single conspiracy may embrace multiple criminal objectives. The agreement need not include knowledge that any relevant offense is in fact "triable by military commission."

(3) The overt act must be done by one or more of the conspirators, but not necessarily the accused, and it must be done to effectuate the object of the conspiracy or in furtherance of the common criminal purpose. The accused need not have entered the agreement or criminal enterprise at the time of the overt act.

(4) The overt act need not be in itself criminal, but it must advance the purpose of the conspiracy. It is not essential that any substantive offense be committed.

(5) Each conspirator is liable for all offenses committed pursuant to or in furtherance of the conspiracy by any of the co-conspirators, after such conspirator has joined the conspiracy and while the conspiracy continues and such conspirator remains a party to it.

(6) A party to the conspiracy who withdraws from or abandons the agreement or enterprise before the commission of an overt act by any conspirator is not guilty of conspiracy. An effective withdrawal or abandonment must consist of affirmative conduct that is wholly inconsistent with adherence to the unlawful agreement or common criminal purpose and that shows that the party has severed all connection with the conspiracy. A conspirator who effectively withdraws from or abandons the conspiracy after the performance of an overt act by one of the conspirators remains

guilty of conspiracy and of any offenses committed pursuant to the conspiracy up to the time of the withdrawal or abandonment. The withdrawal of a conspirator from the conspiracy does not affect the status of the remaining members.

(7) That the object of the conspiracy was impossible to effect is not a defense to this offense.

(8) Conspiracy to commit an offense is a separate and distinct offense from any offense committed pursuant to or in furtherance of the conspiracy, and both the conspiracy and any related offense may be charged, tried, and punished separately. Conspiracy should be charged separately from the related substantive offense. It is not a lesser-included offense of the substantive offense.

## 7) Attempt

a. *Elements.*

(1) The accused committed an act;

(2) The accused intended to commit one or more substantive offenses triable by military commission;

(3) The act amounted to more than mere preparation; and

(4) The act apparently tended to effect the commission of the intended offense.

b. *Comments.*

(1) To constitute an attempt there must be a specific intent to commit the offense accompanied by an act that tends to accomplish the unlawful purpose. This intent need not involve knowledge that the offense is in fact "triable by military commission."

(2) Preparation consists of devising or arranging means or measures apparently necessary for the commission of the offense. The act need not be the last act essential to the consummation of the offense. The combination of specific intent to commit an offense, plus the commission of an act apparently tending to further its accomplishment, constitutes the offense of attempt. Failure to complete the offense, whatever the cause, is not a defense.

(3) A person who purposely engages in conduct that would constitute the offense if the attendant circumstances were as that person believed them to be is guilty of an attempt.

(4) It is a defense to an attempt offense that the person voluntarily and completely abandoned the intended offense, solely because of the person's own sense that it was wrong, prior to the completion of the substantive offense. The voluntary abandonment defense is not allowed if the

21

abandonment results, in whole or in part, from other reasons, for example, the person feared detection or apprehension, decided to await a better opportunity for success, was unable to complete the crime, or encountered unanticipated difficulties or unexpected resistance.

(5) Attempt is a lesser-included offense of any substantive offense triable by military commission and need not be charged separately. An accused may be charged with attempt without being charged with the substantive offense.

## 7. EFFECTIVE DATE

This Instruction is effective immediately.

William J. Haynes II
General Counsel of the Department of Defense