IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISSAM HAMID ALI BIN ALI AL JAYFI, *et al.*, )<br>)<br>Petitioners/Plaintiffs, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, *et. al.*, )<br>)<br>)<br>Respondents/Defendants. )<br>) | Case No. 1:05-CV-02104 (RBW) |

**PETITIONER ALI HAMZA AHMED SULIMAN BAHLOOL'S MOTION TO
STAY MILITARY COMMISSION PROCEEDINGS
AND FOR EXPEDITED BRIEFING SCHEDULE**

Petitioner Suliman Bahlool respectfully moves this Court to stay military commission proceedings that have been initiated against him by Respondents in Guantánamo Bay, Cuba until the Supreme Court has issued its decision in *Hamdan v. Rumsfeld,* 415 U.S. F.3d 33 (D.C. Cir. 2005), *cert. granted,* 74 U.S.L.W. 3108 (U.S. Nov. 7, 2005) (No. 05-184). Such a stay is necessary in order to protect Petitioner from the irreparable harm of being tried by a tribunal that lacks jurisdiction over the charges against him. Moreover, the issuing of this stay serves the interests of judicial economy and is in the public interest, as the exact, substantial issues to be resolved by the Supreme Court in *Hamdan* have been raised by Petitioner in his challenge to the legality of the military commission process.[1]

Because the commencement of military commission proceedings against Bahlool is imminent, with hearings scheduled as early as January 10, 2006, Petitioner respectfully requests

---

[1] Pursuant to LCvR 7(m), the Parties held a telephonic conference on December 29, 2005, regarding the present motion. Counsel for Respondents indicated that they intend to oppose the same.

that the Court set an expedited briefing schedule on this matter. *See* Exhibit A, *Trial Term for Commissions Sessions, Week of 9 Jan 2006, Guantanamo Bay Cuba,* Email from Keith Hodges.

After subjecting Petitioner to over two years of detention without any charge against him, Respondents in February, 2004, for the first time announced charges. On June 29, 2004, those charges were referred to a military commission. Petitioner's commission was one of four originally scheduled in 2004 to serve as the first set of commissions since World War II. In December, 2004, the Appointing Authority administratively stayed Petitioner's commission because of the U.S. District Court's decision in *Hamdan*. In November, 2005, pursuant to the D.C Circuit's decision in *Hamdan*, the Appointing Authority announced that it was resuming its prosecution of the Petitioner. That commission has now required detailed military defense counsel, to be available for conferences with the presiding officer from January 9 to 12, 2006, and has scheduled an initial proceeding for January 10, 2006. Petitioner has filed with this Court and served on Respondents a Supplemental Petition for Writ of Habeas Corpus which, *inter alia,* challenges the jurisdiction of the military commission over the charges that have been brought against him, and alleges that the structural bias of the commission process and numerous procedural infirmities render it unconstitutional and in violation of international law.

Petitioner's substantive challenges to the military commission process include the identical issues to be resolved by the Supreme Court in *Hamdan*. Specifically, Petitioner has argued that (1) any trial by military commission violates the principle of separation of powers, as such commissions have not been authorized by Congress, and (2) the processes established for military commissions violate the Geneva Conventions. In *Hamdan,* the D.C. Circuit held that petitioner was entitled to pre-commission adjudication of both of these challenges. Although the D.C. Circuit ultimately resolved these challenges against Hamdan, and the Supreme Court

subsequently granted *certiorari,* it is the Circuit Court's determination of these challenges that is being reviewed, and not the conclusion that petitioner was entitled to have them heard prior to the commission process. Thus, a decision by the Supreme Court reversing the D.C. Circuit would necessarily mean that the military commission process against Petitioner Bahlool is illegitimate, and that Bahlool. is entitled to have that process stopped before it begins. A stay of the commission proceedings in Bahlool's case is therefore necessary in order to prevent irreparable harm to him in the form of nullification of his right to pre-commission adjudication of his claims.

Judge Kollar-Kotelly of this Court reached this conclusion in a recent opinion on a motion by David Hicks, another Guantánamo detainee against whom military commission proceedings have been initiated. Judge Kollar-Kotelly enjoined further proceedings against Hicks "until the Supreme Court has issued a final and ultimate decision in *Hamdan.*" *Hicks v. Bush,* 397 F. Supp. 2d 36 (D.D.C. November 14, 2005). The reasoning of that decision should apply with equal force to the present motion.

### I. FACTUAL BACKGROUND

1. Petitioner Bahlool is a 37-year-old Yemeni citizen detained by Respondents at Guantánamo Bay. For nearly three years, he was detained by Respondents without any charges against him.

2. On October 27, 2005, following the Supreme Court's decision in *Rasul v. Bush,* 542 U.S. 466, 124 S. Ct. 2686 (2004), counsel for Petitioner filed with this Court a Petition for Writ of Habeas challenging the legality of Petitioner's ongoing detention.

3. On November 7, 2005, the United States Supreme Court granted *certiorari* in *Hamdan v. Rumsfeld,* 415 F. 3d 33 (D.C. Cir. 2005), *cert. granted,* 74 U.S.L.W. 3108 (U.S. Nov. 7, 2005) (No. 05-184). Hamdan presented two questions for review by the Supreme Court: (1) "Whether the military commission established by the President to try petitioner and others similarly situated for alleged war crimes in the 'war on terror' is duly authorized under Congress's Authorization for the Use of Military Force (AUMF), Pub. L. No. 10740, 115 Stat. 224; the Uniform Code of Military Justice (UCMJ); or the inherent powers of the President?" and (2) "Whether petitioner and others similarly situated can obtain judicial enforcement from an Article III court of rights protected under the 1949 Geneva Convention in an action for a writ of habeas corpus challenging the legality of their detention by the Executive branch?" Petition for Writ of Certiorari, *Hamdan v. Rumsfeld,* 2005 WL 1874691 (August 8, 2005) (No. 05-184).

4. On December 13, 2005, after learning that Petitioner Bahlool was pending a trial before a commission, undersigned counsel for Petitioner Bahlool filed with this court a Supplemental Petition for Writ of Habeas Corpus. In the Supplemental Petition, Petitioner argues, *inter alia,* that the military commission has been illegally constituted, in violation of U.S. statutory and constitutional law and international law, that the commission lacks jurisdiction over the charges that have been brought against Bahlool, and that the procedures of the military commission violate Bahlool's rights of equal protection and due process under U.S. and international law.

## II. ARGUMENT

Injunctive relief is appropriate where, as here, (i) petitioner likely would suffer irreparable injury if this Court does not grant injunctive relief, (ii) the injunction would cause no irreparable harm to the respondents, (iii) such an injunction would serve the public interest, and (iv) petitioner's claims have a substantial likelihood of success on the merits. *See, e.g., Al Fayed v. CIA,* 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs. Inc. v. Shalala,* 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). These factors are to be balanced against one another, with a recognition that all four need not be equally strong. *Serono Labs,* 158 F.3d at 1318; *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C. Cir.1995) ("If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak").

Assuming that the Court finds that a stay is appropriate in light of the four-factor, sliding scale analysis, it may, under the All Writs Act, 28 U.S.C. § 1651(a), stay the military commission proceedings pending a final decision from the Supreme Court in *Hamdan*. As the D.C. Circuit made clear in *Hamdan,* challenges to the jurisdiction of a military commission over a petitioner are properly considered by the district court *prior* to the adjudication by military commission of that petitioner. *Hamdan,* 415 F. 3d at 36-37; *accord Hicks,* 397 F. Supp. 2d at 41. The All Writs Act, which empowers the Court to issue writs "necessary or appropriate in aid of [its] jurisdiction[]," therefore provides the court with the authority to stay the commission proceedings against Petitioner, in order to preserve the Court's jurisdiction over Petitioner's substantial jurisdictional challenges to the military commission.

### A. Bahlool Will be Irreparably Harmed if He is Subjected to a Military Commission Which Lacks Jurisdiction Over Him

A stay is necessary in order to protect Bahlool from irreparable harm. Irreparable harm is the keystone to injunctive relief, and the harm faced by the petitioner must be "both certain and great," and "'of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Wisconsin Gas Co. v. FERC,* 758 F.2d 699, 674 (D.C. Cir. 1985) (quoting *Ashland Oil, Inc. v. FTC,* 409 F. Supp. 297, 307 (D.D.C.), *aff'd,* 548 F.2d 977 (D.C. Cir. 1976) (internal citation omitted). The injury faced by Bahlool if the military commission proceeds meets this exacting standard.

The D.C. Circuit's decision in *Hamdan* articulates the type and magnitude of harm that Petitioner Bahlool faces if the military commission goes forward. As the Court stated, a decision by a court to overturn the judgment and conviction of a tribunal after the fact "insufficiently redresses the defendant's right not to be tried by a tribunal that has no jurisdiction." *Hamdan,* 415 F.3d at 36 (citing *Abney v. United States,* 431 U.S. 651, 662 (1977). As used by the D.C. Circuit, the phrase "insufficient[] redress[]" is, at base, a statement of irreparable harm. The injury that would be done to Petitioner if the military commission proceeded against him could not be cured if the Supreme Court reversed in *Hamdan.* As Judge Kollar-Kotelly has noted, the crux of that injury is "the fact that [Petitioner] would have been tried by a tribunal without any authority to adjudicate the charges against him in the first place, potentially subjecting him to a second trial before a different tribunal." *Hicks,* 397 F. Supp. 2d at 42.

As Judge Kollar-Kotelly suggests, the nature and magnitude of the injury that Petitioner would face is akin to that of double jeopardy. Indeed, the *Abney* case cited by the D.C. Circuit was a double jeopardy case. As the Supreme Court stated in *Abney,* "the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with

6

certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Abney,* 431 U.S. at 661. This injury—so great as to undergird a constitutional right, and to find deep precedential support in Anglo-American common law—is indisputably sufficient to support a finding of irreparable harm to Petitioner.[2]

Similarly, the injury faced by Petitioner Bahlool if he is denied pre-commission adjudication of his jurisdictional challenges can be analogized to a claim of immunity. As with double jeopardy, interlocutory orders denying claims of official immunity are properly heard pre-trial. *See Mitchell v. Forsyth,* 472 U.S. 511 (1985). To do otherwise would obviate the very right of immunity claimed by the defendant. Bahlool's jurisdictional challenges constitute a

---

[2] Notably, the sparse and ever-changing rules of the military commission provide no guarantee against double jeopardy. The current incarnation of the rules does provide that an accused detainee "shall not again be tried by any Commission for a charge once a Commission's finding on that charge becomes final." *See* Department of Defense Military Commission Order No. 1 (August 31, 2005) (superseding Military Commission Order No. 1 issued March 21, 2002) ¶ 5(P), *available at* http://www.defenselink.mil/news/Sep2005/d20050902order.pdf. However, there is nothing in the rules to prevent Respondents from retrying a defendant at any time if the Commission conviction is not deemed "final" (by the President or the Secretary of Defense), or from removing Petitioner from military custody and seeking to try him in federal court, as Respondents are presently attempting in the case of José Padilla. *See Padilla v. Hanft,* -- F. 3d. -- (4th Cir. December 21, 2005) (No. 05-6396), *available at* http://pacer.ca4.uscourts.gov/opinion.pdf/056396R1.P.pdf (denying government motion to transfer Padilla, an "enemy combatant" as designated by the President, from military custody in South Carolina to civilian law enforcement custody in Florida). Moreover, Respondents have argued throughout this litigation that the detainees at Guantánamo Bay are not entitled to any constitutional protections whatsoever, including due process under the Fifth Amendment, *see In re. Guantanamo Detainee Cases,* 355 F.Supp.2d 443 (D.D.C. 2005)), and presumably would argue that Petitioner is not entitled to the Fifth Amendment's protection against double jeopardy either. However, Bahlool need not demonstrate here that he is entitled to a constitutional right against double jeopardy; rather, the fact that the injury he faces is equivalent to that for which the Constitution provides specific protection establishes the requisite harm for injunctive relief to be granted. And if Respondents are correct that Petitioner is not entitled to assert a right against double jeopardy, then the injury he would suffer is all the more irreparable.

claim to jurisdictional immunity with respect to the military commission. To allow the military commission to proceed against Bahlool before these challenges are resolved would obviate the very rights that Petitioner claims, and specifically, the "right not to be tried by a tribunal that has no jurisdiction." *Hamdan,* 415 U.S. F.3d at 36.

Petitioner Bahlool faces additional irreparable harm if he is required to participate in a military commission that is structurally biased in favor of Respondents. Bahlool has made exactly this claim in his Supplemental Petition, and this issue is on review before the Supreme Court in *Hamdan.* As the D.C. Circuit held in *Cobell v. Norton,* 33 F. 3d 1128 (D.C. Cir. 2003), post-trial review of partial proceedings is inadequate because the injury done by a partial judicial authority is irreparable:

> "The remedy by appeal is inadequate. It comes after the trial and, if prejudice exist, it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient."

*Cobell,* 33 F.3d at 1139 (quoting *Berger v. United States,* 255 U.S. 22, 36, (1921)).

Just as the magnitude of the harm faced by Bahlool cannot be disputed, nor can its imminence. Respondent Altenburg, the Appointing Authority for the military commissions, has ordered that commission proceedings against Bahlool commence. The presiding officer of the commission constituted in Bahlool's case has since required detailed defense counsel to be available to attend conferences at Guantánamo Bay with the presiding officer from January 9 to January 12, 2006, and has scheduled a formal hearing for January 10, 2006. Thus, the harm faced by Petitioner Bahlool is on the immediate horizon, thereby necessitating a stay.

Any suggestion that the harm faced by Bahlool is speculative must be rejected. If, as Petitioner has argued and the Supreme Court is now considering in *Hamdan,* the military

commission is illegitimate and lacks jurisdiction over Bahlool, then the harm done to him, as recognized by the D.C. Circuit, commences with the first commission proceeding. To permit the commission proceedings to go forward before adjudicating the jurisdictional claims would subject Bahlool to exactly the injury for which, according to the D.C. Circuit, post-commission review would provide insufficient redress. The only way that this harm can be avoided is by having Petitioner's substantial jurisdictional claims adjudicated by the Court pre-commission, and in light of Respondents' decision to initiate commission proceedings during the week of January 9, 2006, such adjudication can only be done if the commission process against Bahlool is stayed.

### B. Staying the Military Commission Proceeding Against Petitioner Bahlool Will Not Prejudice Respondents

The staying of the military commission proceeding against Bahlool pending a final decision in *Hamdan* would not prejudice Respondents. Respondents have incarcerated Bahlool for nearly four years. Thus, while Bahlool is eager to bring his indefinite detention to an end, in light of this long delay on Respondents' part it is difficult to see how Respondents would be prejudiced by awaiting a decision by the Supreme Court in a case already pending there. Moreover, in the past Respondents themselves have expressed a desire to stay Guantánamo proceedings in order to permit an appeal in the *Hamdan* case to be decided. Specifically, in the case of *Hicks v. Bush,* 1:02-cv-00299 (CKK), Respondents asked for an abeyance of proceedings in Guantánamo detainee David Hicks's habeas case pending a decision by the D.C. Circuit in *Hamdan,* arguing that judicial economy so warranted because the D.C. Circuit's decision might require reevaluation of issues by the habeas court if it were to act in the interim. *See* Exhibit B, Response to Order to Show Cause, No. 1:02-cv-00299 (CKK)) (D.D.C. filed 11/29/2004).

In *Hamdan* itself (filed as *Swift v. Rumsfeld*), Respondents moved to hold the original habeas petition in abeyance on the grounds of judicial economy in light of then-pending Supreme Court Cases that might effect the outcome. *See* Exhibit C, Motion for Order Holding Petition in Abeyance, *Swift v. Rumsfeld,* No. C04-777RSL, at 8-9 (W.D. Wash. Filed April 23, 2004) (exhibits excluded). Respondents' earlier appeals to judicial economy in *Hicks* and *Hamdan* justify the issuance of a stay here just as they did in those cases. The argument in favor of a stay is made only stronger by the fact that *Hamdan* is now pending before the Supreme Court, such that the highest court in the land is now poised to rule upon, and may well invalidate, the commission process.

C. The Public Interest Favors Awaiting a Decision From the Supreme Court on the Exact Issues to Be Litigated in the Present Case

Just as Respondents have argued previously in *Hicks* and *Hamdan,* it is in the public interest for the military commission to await guidance from the Supreme Court on issues relating directly to the legality of the commissions. Not only are the interests of judicial economy served by a stay, so, too, is a broader interest in ensuring the legitimacy of the commission process.

While the granting of *certiorari* does not tell us the ultimate outcome of the issues in *Hamdan,* the fact that the case is now pending before the Supreme Court does create the possibility that the commission process will be held illegal. The legitimacy of the commission process therefore hangs in the balance. If the Supreme Court has granted *certiorari,* it is fair to conclude that there is at least reason to believe that the commission may be illegal. For the commission against Bahlool to go forward with *Hamdan* in its current posture would necessarily raise questions about the fairness of the process, thereby doing damage to a public interest in maintaining the integrity of American judicial processes. Indeed, the granting of *certiorari* in *Hamdan* has intensified concerns, both domestically and internationally, regarding standards of

justice at Guantánamo, concerns that previously have been fueled by Respondents' insistence on their right to hold indefinitely those individuals designated as "enemy combatants," and by the numerous, substantiated allegations of torture and abuse of detainees at Guantánamo. As Judge Kollar-Kotelly concluded, "It would not be in the public interest to subject Petitioner to a process which the highest court in the land may determine to be invalid. It is in the public interest to have a final decision, leaving no doubts as to this key jurisdictional issue, before Petitioner's military commission proceedings begin." *Hicks,* 397 F. Supp. 2d at 43.

### D. The D.C. Circuit's Decision in *Hamdan* Does Not Preclude the Staying of the Military Commission Against Petitioner Bahlool

Although the D.C. Circuit has decided the merits of *Hamdan* against the petitioner, this does not preclude the staying of the military commission against Petitioner Bahlool As noted previously, the present request for a stay is to be adjudicated along a sliding scale. Thus, an injunction may issue "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury," *CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 745 (D.C. Cir. 1995), but may also issue in "a case in which the other three factors strongly favor interim relief ... if the movant has made a *substantial* case on the merits." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D. C. Cir. 1977) (emphasis added).

While the D.C. Circuit ruled against petitioner on the merits in *Hamdan,* it stated explicitly that the arguments raised by petitioner were substantial. *Hamdan,* 415 F.3d at 36-37. The fact that the Supreme Court has granted *certiorari* further supports the view that petitioner's case on the merits is substantial. *See Hicks,* 397 F. Supp. 2d at 44 ("Recognizing the importance of the D.C. Circuit's ruling in *Hamdan* and the 'substantial' issues raised by those challenging

11

the military commission's jurisdiction, the Supreme Court has already granted *certiorari* in the case for immediate briefing and oral argument this term."). Even if the Court were to conclude that the likelihood of success on the merits is weak, injunctive relief is still warranted in light of the overwhelming strength of the other three factors.

A weighing of all four factors for injunctive relief therefore favors granting the request to stay the military commission proceeding against Petitioner Bahlool. Such relief fulfills the purpose of interim injunctive relief, "to maintain the status quo pending a final determination of the merits of the suit," *Holiday Tours,* 559 F.2d at 844, and is especially appropriate in light of the impending, ultimate determination of the issues by the Supreme Court.

### III. CONCLUSION

Based on the foregoing analysis, Petitioner Bahlool respectfully requests that this court stay the military commission proceedings against him pending a final decision from the Supreme Court in *Hamdan v. Bush,* and order an expedited briefing schedule in light of the impending commission hearings scheduled for the week of January 9, 2006.

Dated: December 29, 2005
      New York, NY

                Respectfully submitted,

                Counsel for Petitioners/Plaintiffs:

                Wesley R. Powell*
                wpowell@hunton.com
                Patrick Train-Gutiérrez*
                ptrain-gutierrez@hunton.com
                HUNTON & WILLIAMS LLP
                200 Park Avenue
                New York, NY 100166
                (212) 309-1000
                (212) 309-1100 (facsimile)

Thomas R. Snider
tsnider@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500
(202) 778-2201 (facsimile)


*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499



\*      Not admitted in the District of Columbia District but qualified to practice as *pro bono* counsel pursuant to L.Cv.R. 83.2(9).

13