# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ISSAM HAMID ALI BIN ALI AL JAYFI,** *et al.,* )<br>)<br>)<br>**Petitioners/Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**GEORGE W. BUSH,** *et. al.,* )<br>)<br>)<br>**Respondents/Defendants.** )<br>) | **Case No. 1:05-CV-02104 (RBW)** |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.      This Court Retains Subject Matter Jurisdiction Over Petitioners' Action because their claims are not frivolous and have not been decided on the merits by the supreme Court. ....................................................................5

II.     *Boumediene I* Is not dispositive of subject matter jurisdiction in this case, because the constitutionality of the MCA remains in Dispute and petitioners have not exhausted alternative remedies............................................7

III.    The Court Should Issue Issue a Stay-and-Abey Order, Pending petitioners' exhaustion of alternative remedies under the dta....................................................8

    A.      The District Court Has Discretion to Enter a Stay......................................9

    B.      It Would Be an Abuse of Discretion For This Court Not to Issue a Stay-and-Abey Order. ..............................................................................10

IV.     Maintaining the Status Quo Is Necessary, As Dismissal Would Irreparably Harm Petitioners in Contravention of the Express Instruction of the Supreme Court. ....................................................................................13

    A.      This Court Has the Discretion To Issue Orders Maintaining the Status Quo Pending Resolution of Jurisdictional Issues............................14

    B.      Maintaining the Status Quo is Necessary to Prevent Irreparable Harm to Petitioners' Claims.....................................................................16

V.      In the Event This Court Determines It Lacks Jurisdiction, Petitioners' Cases Should Be Transferred to the Court of Appeals Pursuant to 28 U.S.C. § 1631.....................................................................................17

VI.     The Petitions of Repatriated Petitioners Should Not be dismissed as moot..........18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Al-Marri v. Bush*, No. 04-2035, 2005 U.S. Dist. LEXIS 6259
(D.D.C. Apr. 4, 2005) ...................................................................................20

*Bell v. Hood*, 327 U.S. 678 (1946)......................................................................7

*In re Ballay*, 482 F.2d 648 (D.C. Cir. 1973) ....................................................21

*In re President & Dirs. of Georgetown Coll.*, 331 F.2d 1000
(D.C. Cir. 1964) ...........................................................................................16

*Boumediene v. Bush*, 476 F. 3d 981 (D.C. Cir. 2007) ............................... *passim*

*Boumediene v. Bush*, 127 S. Ct. 1478 (2007) ............................................ *passim*

*Carafas v. LaVallee*, 391 U.S. 234 (1968)........................................................21

*Church of Scientology v. United States*, 485 F.2d 313 (9th Cir. 1973) ..............21

*Fiswick v. United States*, 329 U.S. 211 (1946) .................................................21

*Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006) ..................................................13

*Hicks v. Bush*, 452 F. Supp. 2d 88 (D.D.C. 2006) ............................................16

*Justin v. Jacobs*, 449 F.2d 1017 (D.C. Cir. 1971).............................................21

*Kanivets v. Riley*, 286 F. Supp. 2d 460 (E.D. Pa. 2003)....................................20

*Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145 (2006)....................................15

*Lee v. Reno*, 15 F. Supp. 2d 26 (D.D.C. 1998) .................................................20

*Omar v. Harvey*, No. 05-2374, 2006 U.S. Dist. LEXIS 7228
(D.D.C. Feb. 6, 2006) ...................................................................................20

*Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661 (1974) ..........7

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .......................................................12

*Padilla v. Hanft*, 126 S. Ct. 1649 (2006) .......................................................4, 5

*Rasul v. Bush*, 542 U.S. 466 (2004)..................................................................12

*Rhines v. Weber*, 544 U.S. 269 (2005)...........................................................10, 11, 12, 14

*Rose v. Lundy*, 455 U.S. 509 (1982) ...........................................................................10, 11

*Sibron v. New York*, 392 U.S. 40 (1968)...............................................................................21

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).......................................4, 6, 7

*Texas v. Cobb*, 532 U.S. 162 (2001) ....................................................................................9

*United States v. Booker*, 543 U.S. 220 (2005) ...................................................................9

*United States v. Shipp*, 203 U.S. 563 (1906) ....................................................................15

*United States v. United Mine Workers*, 330 U.S. 258 (1947)...........................................15

## DOCKETED CASES

*In re Ali*, No. 06-1194 (U.S. Mar. 5, 2007)........................................................................9

Protective Order, *Bismullah v. Rumsfeld*, No. 06-1197 (D.C. Cir.
   Aug. 25, 2006) .....................................................................................................14, 15, 17

Reply of Federal parties Addressing the Detainee Treatment Act of 2005,
   *Al Odah v United States*, Nos. 05-5064 (D.C. Cir. Mar. 17, 2006) ........................8, 19

Respondents' Reply in Support of Motion to Dismiss, *Hamdan v. Rumsfeld*,
   No. 04-01519 (D.D.C. Dec. 8, 2006)...................................................................................19

## FEDERAL STATUTES

28 U.S.C. § 1631...................................................................................................2, 5, 18, 19

28 U.S.C. § 2241...............................................................................................................12

28 U.S.C. § 2254...............................................................................................................10

## LEGISLATIVE HISTORY

Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 (2005)..................2

Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006)..............3

**MISCELLANEOUS**

Randy Hertz & James S. Leibman, *Federal Habeas Corpus Practice &
 Procedure* § 8.2b (5th ed. 2005) ..................................................................................21

Petitioners Issam Hamid Ali Bin Ali Al Jayfi, Othman Ali Mohammed Al Shamrany, Ali Hamza Ahmed Suliman Bahlool, and Abdul Al Qader Ahmed Hussain (collectively, "Petitioners"), through their next friends[1] and undersigned counsel, hereby respond to Respondents' Motion to Dismiss ("Motion") filed April 19, 2007, in all pending Guantánamo *habeas corpus* cases pending in this District.  For the reasons detailed below, Petitioners respectfully request that this Court issue an order denying the Motion and holding this action in abeyance pending (i) Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 ("DTA")[2] or (ii) a final decision by the Supreme Court on whether the district courts have jurisdiction over habeas claims by Guantánamo detainees.[3]

In the event the Court determines that it lacks jurisdiction over this action and should grant the Motion, Petitioners alternatively request that the Court transfer this habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioners' DTA actions, which we expect to file shortly.

---

[1]  The October 27, 2005 Petition on behalf of these Guantánamo detainees was authorized, respectively, by the following next friends:  Hamid Ali Al Jayfi, Ali Mohamed Omar Al Shamrany, Abdoul Mohammed Ahmed Bahlool, and Abdulgader Ahmed Hasin Abobaker.  The Petition was also brought on behalf of two additional men believed to be detained in Guantánamo, Khalid Mohammed Al Thabbi, by his next friend Muhammed Ahmed Muhammed Al Ghurbany, and Saleh Mohammed Seleh Al Thabbi, by his next friend Fatmah Qhasim Al Ahmadi. Respondents have informed counsel that they have been unable to locate in Guantánamo any detainees matching the names or descriptions of these two Petitioners.

[2]  Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 (2005).

[3]  *Boumediene v. Bush*, 476 F. 3d 981 (D.C. Cir. 2007)(*"Boumediene I"); Boumediene v. Bush*, 127 S. Ct. 1478 (2007) (*"Boumediene II"*).

## INTRODUCTION

Petitioners oppose the Motion because controlling Circuit and Supreme Court authority require the Court to continue its stay of the district court proceedings pending (i) Petitioners' exhaustion of their remedies under the DTA in the Court of Appeals and (ii) the conclusion of ongoing challenges to the Military Commissions Act of 2006 ("MCA"),[4] which purported to eliminate federal court jurisdiction over the habeas corpus claims of Guantánamo detainees. In denying certiorari in *Boumediene II,* three dissenting Justices found that the habeas-stripping provisions of the MCA posed a "significant [question]...warranting...review."[5] In a separate concurring statement, two Justices found that they could not review the issue "at this time" because Petitioners had failed to exhaust alternative remedies to habeas corpus.[6] Thus, a majority of the Supreme Court has signaled a willingness to rehear the issues raised in *Boumediene II* once alternative remedies have been exhausted.

As an initial matter, contrary to Respondents' assertion in the Motion, the Supreme Court's denial of certiorari in *Boumediene II* is not an occasion for dismissal of this action, because this court is not bound by the Court of Appeals' jurisdictional decision in that case. It is well-settled that courts — including in the habeas context — have the power to determine their own jurisdiction. Moreover, the Supreme Court has held — in a case Respondents rely on in the Motion — that a district court may properly

---

[4]     Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006).

[5]     *Boumediene II,* 127 S. Ct. at 1480 (Breyer, J., dissenting).

[6]     *Id.* at 1479 (statement of Stevens and Kennedy, JJ.).

2

dismiss a federal claim on jurisdictional grounds based on the invalidity of that claim only when it is frivolous or barred by *prior decisions of the Supreme Court*, not, as Respondents request, based on a Court of Appeals decision.[7]  The Supreme Court's denial of certiorari in *Boumediene II* does not serve as a binding decision for this purpose.[8]

Moreover, the Supreme Court has held that, where a petitioner must pursue alternative remedies prior to pursuing a federal habeas action, a district court should stay, and hold in abeyance ("stay and abey"), the federal habeas action pending the Petitioner's exhaustion of those alternative remedies.   In those comparable circumstances, courts have held it to be an abuse of discretion for a district court to dismiss the federal habeas petition.

While questions of jurisdiction are being decided, as they are here, a district court still has the authority to issue orders maintaining the status quo of the petition.   In fact, two of the Justices in the denial of certiorari in *Boumediene II* specifically charged the courts with preventing any actions by Respondents that would damage Petitioners' ability to exhaust their remedies under the DTA.[9]  Dismissal of this

---

[7]     *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

[8]     The *Boumediene* petitioners have moved for a stay of the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the Court of Appeal's jurisdictional ruling in *Boumediene I*.  The court has not yet acted on the motion, and the mandate has not issued.

[9]     The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"*Boumediene II*, 127 S. Ct. at 1479 (statement of Stevens and Kennedy,

case would void the Amended Protective Order issued in this case as well as other orders and rulings regarding access to clients. Negotiating a new Protective Order that provides the same levels of access to clients and protection of the attorney-client privilege could takes weeks or longer, ultimately delaying if not outright preventing counsel from being able to file a fair and accurate petition for review under the DTA. For this reason, the Court should issue a stay-and-abey order while Petitioners' DTA petitions are being litigated.

In the alternative, should the Court determine that it does not have jurisdiction over these habeas claims, Petitioners request that the underlying habeas action be transferred to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with their DTA petitions, which we expect to file shortly.

Finally, it would be premature for this Court to dismiss the habeas petition of repatriated Petitioner Al Jayfi. The Court of Appeals decision in *Boumediene I* is not dispositive as to the merits of continuing to maintain the repatriated Petitioners' habeas actions. Moreover, Petitioner Al Jayfi continues to suffer collateral consequences from his detention and denomination as an "enemy combatant." Under these circumstances, his habeas claim was not mooted by his repatriation.

## **PROCEDURAL BACKGROUND**

Petitioners filed their Petiton for Writs of Habeas Corpus on October 27, 2005. On December 22, 2005, the Court issued an Order granting the Motion for entry

---

JJ.) (quoting *Padilla v. Hanft*, 126 S. Ct. 1649, 1650 (2006) (Kennedy, J., concurring in denial of certiorari)).

of the Amended Protective Order.[10]  On the same date, the Court issued an Order staying

this action pending the outcome of the pending appeals in the *Boumediene* and *Al Odah*

cases.[11]  On January 31, 2007, the Court administratively closed this action and the other

Guantánamo habeas cases pending before it.[12]

## ARGUMENT

I.    **THIS COURT RETAINS SUBJECT MATTER JURISDICTION OVER PETITIONERS' ACTION BECAUSE THEIR CLAIMS ARE NOT FRIVOLOUS AND HAVE NOT BEEN DECIDED ON THE MERITS BY THE SUPREME COURT.**

As an initial matter, a case heavily relied on by Respondents demonstrates

that *Boumediene I* is not dispositive of the jurisdictional question presented here.

Respondents cite *Steel Co.* for the uncontroversial proposition that jurisdiction is a

threshold question a court must resolve.[13]  But Respondents have ignored language in

the same case that supports this Court's jurisdiction to hear the habeas action where the

Supreme Court has not resolved on the merits the issue on which jurisdiction turns.[14]

In *Steel Co.* the Court held that the District Court has subject matter

jurisdiction over a federal claim, so long as there is a non-frivolous argument that the

laws and constitution support the claims:

---

[10]      Order filed December 22, 2005

[11]      *Id.*

[12]      Order filed January 31, 2007.

[13]      Respondents' Motion to Dismiss at 4, filed April 19, 2007 (hereinafter "Motion").

[14]      *See Steel Co.*, 523 U.S. at 89.

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'[15]

As demonstrated by the dissenting opinions at both the Circuit Court level in *Boumediene I* and on the denial of certiorari in *Boumediene II*, there is a reading of the Constitution and laws of the United States that would sustain Petitioners' habeas corpus claims.[16]

The *Steel Co.* opinion also establishes that an opinion of the Court of Appeals like *Boumediene I* is not sufficient to deprive the Court of subject-matter jurisdiction. Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy."[17] The *Boumediene* denial of certiorari is not a ruling on the merits.[18]

---

[15]     *Id.* at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).

[16]     *Boumediene I*, 476 F.3d at 994-1012 (Rogers, J., dissenting); *Boumediene II*, 127 S. Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

[17]     *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)).

[18]     "[A]s always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene II*, 127 S. Ct. at 1478

II.   *BOUMEDIENE I* **IS NOT DISPOSITIVE OF SUBJECT MATTER JURISDICTION IN THIS CASE, BECAUSE THE CONSTITUTIONALITY OF THE MCA REMAINS IN DISPUTE AND PETITIONERS HAVE NOT EXHAUSTED ALTERNATIVE REMEDIES.**

*Boumediene I* also is not dispositive of the jurisdictional question presented in the Motion, because the constitutionality of the MCA remains in dispute in the *Boumediene/Al Odah* cases.   Respondents' argument that the law of the Circuit is settled is premised upon an incorrect interpretation of *Boumediene I* as a final decision on the validity of the MCA; in fact, the constitutionality of the MCA itself is still being litigated.   On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens imprisoned at Guantánamo Bay and held that post-*Rasul* statutes deprived courts of jurisdiction over the habeas actions brought by petitioners in those cases.[19]   The *Boumediene*  petitioners filed a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a separate statement concurring in the denial of certiorari.[20]   In their concurrence, Justices Stevens and Kennedy stated that, given the Court's "practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate *"at this time."*[21]   It therefore appears that five Justices will give serious consideration to a renewed petition for certiorari seeking review of the decision in *Boumediene I*, following petitioners' exhaustion of their DTA remedies.   A majority

---

[19]      *Boumediene I*, 476 F.3d at 981.

[20]      *Boumediene II*, 127 S. Ct. 1478 (2007).

[21]      *Id.* at 1479 (statement of Stevens and Kennedy, JJ.) (emphasis added).

of the Supreme Court, in other words, has left open the possibility that the Court of Appeals' holding is erroneous and that the petitioners have the right to pursue habeas relief in the district courts.[22]

While Respondents dismiss this process as a "speculative chain of events," [23] this process is already underway. Two Supreme Court Justices have expressly invited an exhaustion of remedies, and the Court of Appeals singled out a failure to exhaust remedies as a reason for its dismissal of the petition of the *Boumediene* petitioners.[24] Until the DTA petition option has been exhausted by this and other habeas cases, *Boumediene I* should be treated as it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon the district courts overseeing other Guantánamo habeas cases.[25]

## III. THE COURT SHOULD ISSUE ISSUE A STAY-AND-ABEY ORDER, PENDING PETITIONERS' EXHAUSTION OF ALTERNATIVE REMEDIES UNDER THE DTA.

Given the need to exhaust remedies under the DTA, the Court should "stay and abey" this action pending completion of Petitioners' DTA cases directly in the Court of Appeals. Staying this action is consistent with Supreme Court directives in the

---

[22] Indeed, the Supreme Court may reach these questions sooner, as a case is currently pending before that Court that directly concerns the MCA jurisdictional holding of the Court of Appeals. *In re Ali*, No. 06-1194 (U.S. Mar. 5, 2007), is an original habeas corpus action which, *inter alia*, challenges the MCA jurisdictional holding of the Court of Appeals.

[23] Motion at 5.

[24] *See Boumediene I*, 476 F.3d at 994.

[25] *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

comparable situation where a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254. In *Rhines v. Weber*,[26] the Supreme Court explicitly approved the stay-and-abey procedure Petitioners seek here in the context of federal habeas corpus proceedings. The Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions. Moreover, where there is (i) just cause, (ii) no intent to delay on the part of the petitioners, and (iii) a likelihood of success, it would be an abuse of discretion for the court *not* to issue a stay-and-abey order.

### A.     The District Court Has Discretion to Enter a Stay.

In *Rhines*, a prisoner filed in federal court a mixed habeas petition, one containing both claims exhausted through the state court system and unexhausted claims. The Supreme Court recited its precedent in *Rose v. Lundy*,[27] in which it imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, directed the district court to dismiss the mixed petitions at issue without prejudice and instructed affected petitioners to present their unresolved claims in state court.[28]

Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that petitioners could return to federal court following exhaustion of their state claims "with

---

[26]     544 U.S. 269 (2005).

[27]     455 U.S. 509 (1982).

[28]     *Id.* at 522.

relative ease." [29]   Congress's enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal without prejudice by federal court.   Recognizing that problem, the *Rhines* Court allowed district courts to issue stay-and-abey orders at their discretion.

As discussed above, this case and other pending habeas actions by Guantánamo prisoners involve a genuine prospect of further Supreme Court review to decide the federal courts' jurisdiction in their cases.   Petitioners' right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired if this Court were to dismiss their petition now.   In this way, the situation is comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum.

**B.     It Would Be an Abuse of Discretion For This Court Not to Issue a Stay-and-Abey Order.**

Respondents attempt to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition," and the "authority of a court to enter a stay is constrained by statute." [30] However, Respondents fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not

---

[29]     *Rhines*, 544 U.S. at 274.

[30]     Motion at 7.

being actively litigated as part of the habeas petition, as the operative statute is here.   In fact, in the absence of intentional dilatory tactics by the petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious.[31]   Petitioners here satisfy all three preconditions — good cause, no deliberate delay, and potentially meritorious claims — under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust.   Whereas the petitioner in *Rhines* at least had the ability to pursue both modes of relief at the outset of his case, the potential remedy in Petitioners' case did not exist until nine months after their habeas corpus petition was filed and did not purport to provide the habeas relief to which Petitioners were entitled at the time the habeas action was filed.   The questions left open in the Supreme Court's decision in *Rasul v. Bush*,[32] which established a right to proceed under 28 U.S.C. § 2241 at the time Petitioners submitted their documents, and the subsequent DTA and MCA, have resulted in major complexities that left the legal landscape in a state of uncertainty.   The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February 2007.

Nonetheless, Respondents argue that Petitioners could have pursued these petitions any time since the enactment of the DTA.[33]   But Petitioners filed their action

---

[31]     *Rhines*, 544 U.S. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

[32]     542 U.S. 466 (2004).

[33]     Motion at 7.

before the DTA was enacted and have maintained that both the DTA and MCA are unconstitutional. Moreover, in light of the Supreme Court decision in *Hamdan* (finding the DTA was not binding on Mr. Hamdan),[34] Petitioners had no reason to believe that their habeas petitions would be dismissed and that an alternative remedy would be necessary. Petitioners thus had solid reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene II*.

Second, Petitioners have done nothing to deliberately delay this case. Counsel filed Petitioners' petition for habeas corpus relief on October 27, 2005, only a few weeks after being asked to represent these Petitioners by the Center for Constitutional Rights, which had obtained the necessary next friend authorizations. Counsel then actively litigated this case, seeking entry of the Amended Protective Order, production of full factual returns, and other relief.[35] This court then stayed the case on December 22, 2005 and it has remained in abeyance since then.

Third, both the claims raised in this Court and those that will be raised in Petitioners' DTA petitions are potentially meritorious. In both, counsel seek additional factual discovery regarding the circumstances under which statements attributed to Petitioners were made, challenge the Department of Defense's application of own standards and procedures in designating Petitioners as enemy combatants, and assert that those procedures and Petitioners' detention violate the laws and Constitution of the

---

[34]    *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006).

[35]    Motion for the Immediate Issuance of Writs of *Habeas Corpus* Pursuant to 28 U.S.C. § 2243 or, Alternatively, to Issue and Order to Show Cause, filed November 7, 2005.

United States.  Given the split decisions on jurisdiction in *Boumediene I* and granting certiorari in *Boumediene II*, Petitioners' claims must be deemed potentially meritorious.

Respondents argue that Petitioners have no statutory right to have their cases abeyed as they exhaust alternative remedies.[36]  Again, Respondents misinterpret the holding in *Rhines*.  By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for their habeas proceedings in this Court, Petitioners are challenging the constitutionality of the very statute Respondents cite as the basis for dismissing these proceedings.  Not only is abeyance within this Court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

## IV.    MAINTAINING THE STATUS QUO IS NECESSARY, AS DISMISSAL WOULD IRREPARABLY HARM PETITIONERS IN CONTRAVENTION OF THE EXPRESS INSTRUCTION OF THE SUPREME COURT.

In denying certiorari in *Boumediene II*, Justices Stevens and Kennedy expressly charged the courts with "ensur[ing] that the office and purposes of the writ of habeas corpus are not compromised" by government efforts to prejudice petitioners' efforts to obtain Supreme Court review following exhaustion of the DTA remedies.[37]  In the Motion, Respondents ask the Court to dismiss the Petition and vacate the Amended Protective Order and all other access-related orders currently in place in this action, in favor of all new procedures at the Court of Appeals level.  This course would cause irreparable damage to Petitioners' ability to exhaust their alternative remedies.

---

[36]    Motion at 6.

[37]    *Boumediene II*, 127 S. Ct. at 1479 (statement of Stevens and Kennedy, JJ.).

Were the new protective order proposed by Respondents in *Bismullah v. Rumsfeld* (the first of the DTA actions where such procedural issues have been scheduled for hearing before the Court of Appeals)[38] implemented, it would have a chilling effect upon the attorney-client relationship, in that communications from counsel would no longer be privileged, but subject to screening and redaction by the Department of Defense. In addition, counsel would be limited to three visits with their clients, after which they would presumably be cut off from ever seeing their clients again. Negotiating a new Protective Order that ensured protection of attorney-client privilege and access to Petitioners could drag on for months; meanwhile, in the absence of a protective order, Respondents could deny counsel all access to their clients. While jurisdictional issues are being settled, it is within the discretion of this Court to maintain the status quo with respect to the Amended Protective Order and counsel access procedures to ensure that communications between Petitioners and their client are not summarily terminated by a statute whose constitutionality is in the process of being litigated.

### A.    This Court Has the Discretion To Issue Orders Maintaining the Status Quo Pending Resolution of Jurisdictional Issues.

There is a long-established principle that, where the question of jurisdiction is still being settled, the courts have "authority from the necessity of the case to make orders

---

[38]    Protective Order, *Bismullah v. Rumsfeld*, No. 06-1197 at 36-37 (D.C. Cir. Aug. 25, 2006) ("Documents marked 'legal mail' by counsel shall be subject to content review and security and contraband screening by the DoD Privilege Team."), 37 ("Counsel will be notified with respect to legal mail that, upon review, will be redacted or screened out.").

to preserve the existing conditions and subject of the petition."[39]  This Circuit has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition ...." ... Clearly there was "power to preserve existing conditions while ... determining [the] authority to grant injunctive relief."[40]

The district courts have recognized that, regardless of the ultimate resolution of jurisdictional questions, the courts are authorized to enter orders necessary to the ultimate litigation. For example, Judge Leon, who found the rights of Guantánamo detainees extremely limited in scope, entered an order denying Respondents' motion for filter-team review of attorney-client material, based on its lack of jurisdiction;[41] by contrast, Judge Robertson granted the same request on the merits in *Hicks v. Bush*.[42] Both decisions were rendered in cases that had been stayed pending the outcome of *Al Odah* and *Boumediene* cases.  In the same vein, this Court has broad latitude to stay this action pending exhaustion of Petitioners' remedies in the Court of Appeals, while entering or enforcing any procedural orders necessary to maintain the status quo of this litigation.

---

[39]  *United Mine Workers,* 330 U.S. 258, 291 (1947) (quoting *United States v. Shipp,* 203 U.S. 563, 573 (1906) (Holmes, J.)); *see also Kircher v. Putnam Funds Trust,* 126 S.Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction").

[40]  *In re President & Dirs. of Georgetown Coll.,* 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers*).

[41]  *Boumediene v. Bush,* 450 F. Supp. 2d 25 (D.D.C. 2006).

[42]  452 F. Supp. 2d 88 (2006).

**B.**    **Maintaining the Status Quo is Necessary to Prevent Irreparable Harm to Petitioners' Claims.**

This Court has the discretion to enter a stay, and maintaining the status quo is necessary here in order to prevent irreparable harm.  This court should carefully protect the status quo by maintaining the orders entered to date to assure that Petitioners are not prejudiced in their ability to litigate the DTA action as well as to preserve potential remedies before this Court.  Maintenance of the Amended Protective Order, and the client access provided therein, is absolutely critical for effectively exhausting Petitioners' remedies under the DTA.  Without the Amended Protective Order in place, there is no legal mail channel; there is no privileged communication between attorney and client; base visits would be curtailed or eliminated; and counsel may be forced to destroy the classified documents currently in their position that have shed the only insight to date upon the factual bases for Petitioners' detention.  Absent the protections of the Amended Protective Order, counsel will be unable to provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of their DTA Petition.

Also, Respondents have signaled their intent to dramatically restrict prisoners' access to counsel, proposing a Protective Order at the Court of Appeals level that would, among other things, require all legal mail from counsel to Petitioners to be first screened and redacted by Department of Defense employees.  Secondly, counsel would be restricted to three visits with their clients.  It is unclear whether counsel who have already visited their clients three times would be permanently barred from ever visiting their clients again.  Third, Department of Defense officials would have unilateral

16

authority to decide whether to permit counsel to see the evidence used to justify a detainee's enemy combatant designation.[43]

Maintenance of the status quo is critical to foreclosing Respondents from prejudicing Petitioners' ability to litigate – at the District Court or Circuit Court level – these issues. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised. Petitioners have waited nearly three years to enjoy the promise of *Rasul*, and should be spared any further delays that would ensue were it necessary to negotiate a new set of Amended Protective Orders and access procedures.

## V.    IN THE EVENT THIS COURT DETERMINES IT LACKS JURISDICTION, PETITIONERS' CASES SHOULD BE TRANSFERRED TO THE COURT OF APPEALS PURSUANT TO 28 U.S.C. § 1631.

If the Court nevertheless finds that it lacks jurisdiction to hear this case and declines to enter a stay, it should transfer the habeas action to the Court of Appeals for consolidation with Petitioners' DTA petitions, which we expect to file shortly. The transfer statute provides in relevant part:

> Whenever a civil action is filed in a court...or appeal...is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date

---

[43] *See* Protective Order, *Bismullah v. Rumsfeld,* No. 06-1197 at 36-37 (D.C. Cir. Aug. 25, 2006).

upon which it was actually filed in or noticed for the court from which it was transferred.[44]

As described above, it is in the interest of justice for this Court to ensure that the current Amended Protective Order remains in place, thus maintaining counsel's unbroken access to evidence needed to prepare the DTA petition, as well as affording Petitioners an opportunity to participate in the preparation of their DTA submissions, pending the Court of Appeals' decision on how to govern these proceedings.[45] It is also in the interest of justice to preserve the status quo, where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues of client access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, transferring this matter and all related orders to the Court of Appeals will ensure there is no gap in governing procedures until the Court of Appeals can fully consider these procedural issues.

## VI.    THE PETITIONS OF REPATRIATED PETITIONERS SHOULD NOT BE DISMISSED AS MOOT

Petitioner Al Jayfi was repatriated to Yemen in December 2006. Respondents move to dismiss the pending actions of all repatriated detainees for lack of

---

[44]    28 U.S.C. § 1631.

[45]    The Government has taken the position both in the Court of Appeals and in this Court that the detainees' habeas corpus cases should be transferred pursuant to 28 U.S.C. § 1631, and has cited legislative history of the DTA that it suggests supports such transfer. *E.g.,* Reply of Federal Parties Addressing the Detainee Treatment Act of 2005, *Al Odah v United States,* No. 05-5064, at 28-31 (D.C. Cir. Mar. 17, 2006) (citing comments of Senator Graham, *inter alia*); Respondents' Reply in Support of Motion to Dismiss, *Hamdan v. Rumsfeld,* No. 04-01519, at 45 n.24 (D.D.C. Dec. 8, 2006).

jurisdiction.[46]  However, for all of the reasons cited above and those that follow, this Court should not dismiss Al Jayfi's Petition.

In determining whether to grant certain equitable forms of relief in habeas actions, courts commonly evaluate whether the petitioner will suffer irreparable harm absent the relief requested.  In *Kanivets v. Riley*,[47] a foreign national petitioned the District Court for a stay of removal pending habeas review.  Relief was granted in part because the District Court found that petitioner would have been irreparably harmed had he been removed prior to full review of his habeas petition, as there was a possibility that the court "[might] find legal error"[48] warranting a reexamination of petitioner's application for asylum.  Similarly, in *Omar v. Harvey*,[49] the Court ordered injunctive relief preventing petitioner's transfer from U.S. military custody to the custody of Iraqi authorities, as he would have "[suffered] irreparable harm if his current habeas claim [was] eliminated or mooted by the respondent's actions."[50]  This Court further noted that the "danger that the respondents could 'obviate' the petitioner's right to 'test the legitimacy of his executive detention' would certainly constitute a threat of irreparable harm."[51]

---

[46]     Motion at 1.

[47]     286 F. Supp. 2d 460 (E.D. Pa. 2003).

[48]     *Id* at 468.

[49]     No. 05-2374, 2006 U.S. Dist. LEXIS 7228 (D.D.C. Feb. 6, 2006).

[50]     *Id* at *5.

[51]     *Id*. (citing *Al-Marri v.* Bush, No. 04-2035, 2005 U.S. Dist. LEXIS 6259, at *4 (D.D.C. Apr. 4, 2005) (quoting *Lee v. Reno*, 15 F. Supp. 2d 26, 32 (D.D.C. 1998))).

Dismissal would irreparably harm Petitioner Al Jayfi. Under the DTA, petitions to the Court of Appeals may only be filed by persons currently imprisoned in Guantánamo. Thus, Al Jayfi's only means of challenging his prior designation as an enemy combatant in the courts of the United States is through this habeas action. If his case is dismissed, his sole available means of removing the taint of that designation will be extinguished. Under these circumstances, the appropriate course would be to stay Al Jayfi's habeas action pending a final decision by the Supreme Court (in *Boumediene* or another case) on whether district courts have jurisdiction over habeas corpus actions by Guantánamo detainees.

Moreover, despite his repatriation, Petitioner Al Jayfi's claims have not been rendered moot because of, among other things, the collateral results from being labeled an "enemy combatant." It is hornbook law that release from custody does not by itself moot a habeas case.[52] Courts have long held that a habeas petition remains justiciable notwithstanding the release of the petitioner if the conviction or detention being challenged results in "collateral consequences" that outlast the petitioner's confinement.[53] Thus, unless the government can demonstrate that Al Jayfi will suffer no collateral consequences from his five years of imprisonment in Guantánamo and designation as an "enemy combatant," his case cannot be dismissed as moot.[54]

---

[52]    *See* Randy Hertz & James S. Leibman, *Federal Habeas Corpus Practice & Procedure* § 8.2b, at 394-99 (5th ed. 2005) (collecting cases).

[53]    *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); *In re Ballay*, 482 F. 2d 648, 651 (D.C. Cir. 1973); *Justin v. Jacobs*, 449 F. 2d 1017, 1019 (D.C. Cir. 1971).

[54]    A "case remains 'live' if a party may thereafter encounter adverse effects of the event in issue." *Justin*, 449 F. 2d at 1019. Accordingly, courts have widely accepted that challenges to criminal

Although all of the collateral consequences Mr. Al Jayfi may suffer as a result of his enemy combatant designation and five years of detention are not yet known, a number are identifiable already, including that Mr. Al Jayfi was imprisoned in Yemen for several weeks after his release, was required to sign an undertaking in connection with his release, and remains under Yemeni Government surveillance.[55]   All of these restrictions on Mr. Al Jayfi's freedom are a direct result of his five years of detention in Guantánamo and designation as an enemy combatant; these are the quintessential collateral consequences that prevent dismissal of his petition as moot based on his release from custody.

Mr. Al Jayfi ordinarily would be entitled to continue his habeas challenge to his prior detention based on these consequences.   Under the circumstances here, where the validity of the MCA's habeas-stripping provisions remain the subject of ongoing litigation, this Court should simply stay Mr. Al Jayfi's habeas action pending the resolution of those issues by the Supreme Court.   The Court should not dismiss this action as moot.

---

convictions — whether in the habeas or direct-appeal context — remain "live" even after the petitioner or appellant's release, if the conviction at issue results in "collateral consequences" for the person convicted.  *See, e.g., Sibron v. New York*, 392 U.S. 40, 55-58 (1968); *Carafas* 391 U.S. at 237 ("Because of these 'disabilities or burdens (which) may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.'" (quoting *Fiswick v. United States*, 329 U.S. 211, 222 (1946)). The D.C. Circuit has recognized that the same principles apply to habeas petitions challenging detention even outside of the context of a criminal conviction. *Ballay*, 482 F. 2d at 651-52; *Justin*, 449 F. 2d at 1019; *cf. Church of Scientology v. United States*, 485 F. 2d 313, 317-18 (9th Cir. 1973) (finding "no distinction" between a civil and a criminal case for purposes of the collateral consequences doctrine).   Thus, under the law of this Circuit, the absence of a traditional criminal conviction in petitioners' habeas cases is of no meaningful legal consequence.

[55]    While it should remain Respondents' burden on this Motion to demonstrate that Mr. Al Jayfi has suffered no collateral consequences, should the Court require evidence of collateral consequences, *e.g.*, in the form of a declaration, counsel can readily provide it.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter an order preserving the status quo by continuing its stay of litigation going to the merits of the pending petition for a writ of habeas corpus and holding such litigation in abeyance pending the outcome of the Petitioners' DTA petitions.

Dated:  May 3, 2007
Washington, D.C.

Respectfully submitted,

Counsel for Petitioners:

Wesley R. Powell
wpowell@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY   10166
(212) 309-1000
(212) 309-1100 (facsimile)

Karma B. Brown (Bar No. 479744)
kbbrown@hunton.com
Thomas R. Snider (Bar No. 477661)
tsnider@hunton.com
HUNTON & WILLIAMS LLP
1900 K. Street, N.W.
Washington, DC   20006
(202) 955-1500
(202) 778-2201 (facsimile)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ISSAM HAMID ALI BIN ALI AL JAYFI,** *et al.,*     )
)
)
**Petitioners/Plaintiffs,**     )     **Case No. 1:05-CV-02104 (RBW)**
)
**v.**     )
)
**GEORGE W. BUSH,** *et. al.,*     )
)
)
**Respondents/Defendants.**     )
)

## PROPOSED ORDER

Upon consideration of Petitioners' Opposition to Respondents' Motion to Dismiss, it is

ORDERED that (1) the Respondents' Motion to Dismiss the habeas actions of Petitioners is denied, and (2) that these actions shall be held in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, or the Supreme court's resolution of the same jurisdictional issue as presented in a pending petition for certiorari in *Hamdan v. Rumsfeld,* whichever shall occur first.


IT IS SO ORDERED.

DATED:

_____

United States District Judge
Reggie B. Walton